MAURICE STONE v. ADA S. ASHLEY, Administratrix of the Estate of F. D. ASHLEY, Deceased; and GUY F. McCORMICK, T/A FAIRMONT GAS COMPANY.

(Filed 2 June, 1965.)

**1. Sales § 16—**

Evidence that the distributor of tobacco curing equipment operating on liquid petroleum gas was under contractual duty to service and inspect the equipment, that the equipment failed to work properly, and that plaintiff was injured in a fire or explosion when he attempted to repair the equipment, *is held* sufficient to be submitted to the jury on the issue of the distributor's negligence, since a distributor who undertakes to inspect equipment must exercise that degree of care commensurate with the known hazards involved in the use of his product.

**2. Same; Negligence § 26—**

Plaintiff's evidence tending to show that when his petroleum gas tobacco curer failed to work properly he undertook, in violation of written instructions, to repair it, that he closed the valve to the hundred gallon tank, drained the pipes in the tobacco barn of what he thought to be only water, re-opened the valve and attempted to light the pilot light, resulting in an explosion causing injury, *held* to disclose contributory negligence as a matter of law on the part of plaintiff.

APPEAL by plaintiff from *Hall, J.*, October, 1964 Session, ROBESON Superior Court.

The plaintiff, a tobacco farmer, instituted this civil action against the defendant, trading as Fairmont Gas Company, to recover for the serious burns allegedly resulting from the defendant's negligent failure properly to inspect and service the plaintiff's tobacco curer at the time the defendant filled the storage tank with liquid petroleum gas, some

of which the plaintiff drained through the connecting pipes and which exploded when plaintiff attempted to relight the burners after they had sputtered and gone out.

The defendant, by answer, denied negligence in any particular, and as a first further defense alleged:

"5. That the defendants had no control over the equipment on the property and could not prevent the plaintiff from taking his wrenches and removing and disconnecting the pipes, caps and plugs so that the liquid substances from the pipes were drained onto the ground inside of the barn causing a dangerous situation and in violation of the law; that plaintiff unlawfully, after having been forbidden and contrary to posted operating instructions, worked on the gas lines, drained substances from the gas lines into the barn and thereafter attempted to light the burner causing a fire or explosion.

"6. That the negligent and unlawful acts and conduct of the plaintiff was the sole, exclusive, direct and proximate cause of the fire and explosion complained of, and the same is pleaded in bar of his recovery against the defendants."

As a second further defense, the defendant conditionally pleaded the plaintiff's contributory negligence in these particulars:

"12. Plaintiff had been warned not to work on the equipment. Posted notice at the barn instructed plaintiff 'Do not try to make adjustments to the equipment. CALL YOUR GAS DEALER.'

"13. Plaintiff, fully aware of the dangerous propensity of gas, nevertheless, and contrary to posted written instructions, went to his home, got a wrench, returned to the barn in approximately one hour and did then:

"(a)   Unlawfully and against the laws of the State of North Carolina remove the caps (plugs) from the end of each of the four pipes leading to the burners and permitted the substance (which he described as water) to drain out on to the ground floor inside of the barn;

"(b)   That the ground became saturated with this substance which plaintiff drained from gas lines and allowed to remain inside of the barn;

"(c)   After draining this substance from gas lines onto the floor inside the barn, plaintiff then replaced the caps (plugs) back on the end of the lines in a secure position;

"(d)   Did then negligently, unlawfully and carelessly and without due caution and care went back to the storage tank and turned open the gas valve and permitted the gas again to flow from storage tank into the barn;

"(e)   That he then attempted to light the pilot light when fire and explosion occurred;

"That the unlawful and negligent acts and conduct as herein set forth on the part of the plaintiff constituted contributory negligence, and said wrongful, negligent and unlawful acts and conduct are hereby expressly pleaded as contributory negligence and a bar to any recovery by the plaintiff.

"2.   That the laws of North Carolina specifically forbid the draining of gas lines and allowing the drained substance to remain in or near the building or construction and plaintiff was negligent in draining this substance out into the dirt and ground floor of his barn; plaintiff was negligent in tampering with and taking the caps (plugs) from the gas lines, and after doing so to take a live flame or strike a match inside the barn causing and bringing about the fire and explosions; that the negligent acts and conduct of the plaintiff was the sole, direct, exclusive and proximate cause, or was one of the proximate causes of said fire and explosion and which is pleaded in bar of plaintiff's right to recover of the defendants."

At the conclusion of the plaintiff's evidence, which will be discussed in the opinion, the court entered a judgment of compulsory nonsuit, from which the plaintiff appealed.

*Barrington & Britt by J. H. Barrington, Jr., for plaintiff appellant.*
*Ellis E. Page, Henry & Henry for defendant appellees.*

HIGGINS, J.   The plaintiff's allegations and evidence were sufficient to go to the jury on the issue of defendant's negligent failure to inspect and service the tobacco curing equipment after filling the tank with liquid petroleum gas and before the plaintiff began curing operations. The distributor who undertakes the inspection must exercise a degree of care commensurate with the known hazard involved in the use of his product. *Skelly Oil Co. v. Holloway*, 171 Fed. 2d 670, 17 A.L.R. 2d 890, anno.; *Frazier v. Gas Co.*, 247 N.C. 256, 100 S.E. 2d 501; *Gas Co. v. Montgomery Ward & Co.*, 231 N.C. 270, 56 S.E. 2d 689. The nonsuit in this case can not rest on the failure of the plaintiff to allege negligence and to offer proof sufficient for jury consideration that the defendant had failed to discharge its duty to service and inspect the equipment. Hence, in order to sustain the judgment, the plaintiff's contribu-

tory negligence, as a matter of law, must appear from his own evidence. *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; Strong's Supplement to Vol. 3, N. C. Index, Negligence, § 26, n. 277.

The plaintiff, age 50, testified he had been curing tobacco with petroleum gas burning equipment for years. "So far as I know, you can not operate one until you get a certificate of operation from the Department of Agriculture. I had a barn certificate that gas was installed properly. . . . A drawing of the equipment showing installation and operating instructions, a copy of which was duly posted at the tobacco barn . . . The last sentence of the instructions says, do not try to make adjustments on the control yourself, and it says for service call Fairmont Gas Company, MA 8-5641. Fairmont Gas Company furnishes service and advice. When I found out it was not working I took an hour off and did not call . . . and ask them to come."

The equipment consisted of a 1,000-gallon tank located 20 feet from the barn. A one-inch pipe entered the barn at or near ground level. There was a cutoff valve at the tank. Inside the barn there was a control unit from which smaller pipes branched out to four rows of burners, three burners to the row. These were distributed throughout the floor.

On the day of his injury the plaintiff began his curing operations by first opening the valve at the tank permitting the gas to enter the control unit inside the barn. The pilot light operated, showing gas was flowing from the tank. Then, in succession, he lighted the burners which, after burning momentarily, each in turn hissed, sputtered, flickered, and went out. After relighting the units they again sputtered and went out. After it ceased to burn, "something was spraying out of the little yellow burners. . . . It was water."

After cutting off the valves at the tank, at the control unit, and at the burners, the plaintiff went home and in about 40 minutes to an hour, returned. Here is the story as to what he did in his own words: "I got a wrench and came on back to the barn. . . . I was gone from the barn to the house for about forty minutes. When I got back to the barn, my father and I went in. He had a flashlight, and I left the front door about half-open.

"There is a small plug that screws in the end of each of the four pipes which constitute the four rows of burners. It is a small plug that screws in the end of the pipe. . . . My father held the light on the little plug and I took it out. A little bit of water came out, so I left little plug laying right there. I went to the next one and did the same thing and a little bit of water came. I went to the next one, did the same thing; then stayed there a few minutes and went back and mashed the little red button, and it didn't do anything; I heard it say, 's-s-s-s,'

about like that; then went back and put the plugs in and water came out. I decided it was all out. Then I went back out, cut the tank on, just like I always had, came back in, mashed the red button and lit the pilot light and the closest burner, I started to mash it down, the same match came down to the ground and fire flew all over me."

The plaintiff, in careless violation of rules and posted notices, and in utter disregard of his own safety, made adjustments with a wrench by opening the valves and draining the contents from the pipes onto the floor of the barn. He then opened the valves between the tank and the burners, struck a match over the condensate which had drained from the pipes and which he said he thought was water. The condensate exploded and the plaintiff received serious burns. The plaintiff had no right to assume that he had drained nothing but water out of a pipe that was connected with a tank containing 1,000 gallons of liquid petroleum gas. It would be difficult to conceive of conduct more likely to result in injury. The plaintiff's contributory negligence, according to his own evidence, appears as a matter of law. The judgment dismissing the action is

Affirmed.