PATRICIA CANADY, Administratrix of the Estate of DENNIS EARL CANADY v. MICHAEL McLEOD, LYNDON YOUNG and TITUS CAPERS

No. 9310SC3

(Filed 16 August 1994)

1.  **Workers' Compensation § 62 (NCI4th)— death of roofer— death within coverage of Workers' Compensation Act—provision of alcohol to roofers not an intentional tort**

    In a wrongful death action where intestate fell from the roof of a house on which he was working, the trial court properly granted summary judgment for defendant homeowner since, even if defendant were deceased's employer, intestate's death would fall within the exclusive coverage of the Workers' Compensation Act, unless plaintiff could show that deceased's death was the result of an intentional tort committed by defendant, and evidence that defendant provided the roofers with alcoholic beverages was insufficient to show that he engaged in conduct knowing that it was substantially certain to cause serious injury or death.

    **Am Jur 2d, Workers' Compensation §§ 75-87.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.**

2. **Negligence § 28 (NCI4th)— roofing accident—wrongful death action barred by roofer's contributory negligence**

Plaintiff's action against a homeowner for wrongful death of her intestate who was working on a roof on a cold, windy day was barred by deceased's contributory negligence in consuming alcohol provided by the homeowner.

**Am Jur 2d, Negligence §§ 804 et seq., 842 et seq., 1128 et seq.**

3. **Labor and Employment § 190 (NCI4th)— re-roofing house in cold wind—steep roof—no inherently dangerous activity—no recovery for breach of non-delegable duties**

Deceased's job of re-roofing defendant's steep roof on a cold windy day was not an inherently dangerous activity so that plaintiff could not recover from defendant for breaches of non-delegable duties of safety.

**Am Jur 2d, Independent Contractors §§ 40 et seq.**

Appeal by plaintiff from order entered 3 September 1992 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 17 November 1993.

This is a wrongful death action arising out of the death of Dennis Earl Canady who fell from the roof of a house on which he was working. Plaintiff Patricia Canady, the administratrix of the estate of deceased, filed a complaint on 1 March 1991. On 21 August 1992, defendant Titus Capers filed a motion for summary judgment which the trial court granted on 3 September 1992. From the order granting summary judgment, plaintiff appeals.

*Ligon & Hinton, by Lemuel W. Hinton, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, by Susan K. Burkhart and Buxton S. Copeland, for defendant-appellee.*

McCRODDEN, Judge.

Plaintiff assigns error to the trial court's granting of summary judgment for defendant Capers. We have reviewed plaintiff's arguments and affirm the trial court.

A trial court may grant a motion for summary judgment only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E.2d 287, 290 (1978). Where a case involves either (1) a claim or defense which is utterly baseless in fact or (2) a controversy on a question of law on indisputable facts not needing the full exposure of trial, summary judgment is appropriate. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). In ruling on the motion, the trial court must construe all evidence in the light most favorable to the non-moving party, allowing the non-moving party a trial upon the slightest doubt as to the facts. *Moye v. Thrifty Gas Co.*, 40 N.C. App. 310, 314, 252 S.E.2d 837, 841, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979).

The evidence, when considered in the light most favorable to plaintiff, shows the following. Sometime prior to December 1989, defendant Capers hired Lyndon Young to re-roof a house owned by him and his wife in Middlesex, North Carolina. Young hired the deceased to be part of his crew. Around lunchtime on 3 December, Young informed defendant Capers that he needed more plyboard for the roof, so defendant Capers left the work site around 2:00 p.m. to purchase the additional plyboard. He did not return to the Middlesex house until after the accident occurred. The only eyewitnesses to the fall were Young and Titus Gunter (another crew member), neither of whom could be located at the time of the hearing. However, Anthony Tart, who was also working on the Middlesex house on 3 December, testified that the deceased had been on the roof cutting boards with a circular saw prior to his fall. The roof was an A-frame with a steep pitch, approximately 8 on 12.

Tart's testimony was that he had been a friend of Canady's for two or three years prior to the deceased's death. On the day of the accident, Young hired the deceased as a replacement for a member of Young's crew. Using Capers' truck, defendant Capers and Young drove him and the deceased to the work-site on the morning of 3 December. Tart testified that, when the deceased got in the truck, Tart could tell that he was "drunk."

According to Tart, between 12:00 and 12:30 p.m. that day, defendant Capers volunteered to get lunch for the ten men at the work site. Capers returned with sandwiches, a six-pack of Miller beer, and "two liters or fifths" of Richards Wine. Tart consumed some of the alcohol

without noticing any effect upon his ability to function on the roof. He noticed, however, that the deceased was "hitting kind of heavy" on the wine, drinking one-half of a bottle of the Richards Wine.

About 4:00 p.m., while working on the roof, the deceased slipped and fell. He was transported to Wilson Memorial Hospital and was later taken to Pitt County Memorial Hospital. While at Wilson Memorial, medical personnel tested the deceased's blood alcohol content, and the pathology reports later indicated that his blood alcohol content at the time of the test, 5:45 p.m., was 0.293. He died on 10 December 1989.

I. .

[1] In plaintiff's first argument, she contends that, because defendant Capers was the employer of the deceased, he had a duty to provide both a safe place to work and appropriate safety appliances and tools. Defendant Capers responds that he was not the employer of the deceased, but rather that the deceased was an employee of Young, an independent contractor. Citing *Brown v. Texas Co.*, 237 N.C. 738, 741, 76 S.E.2d 45, 46 (1953), defendant Capers submits that because he hired Young, an independent contractor, he is not required to take proper safeguards against dangers which may be incident to the work undertaken by the independent contractor. Thus, he claims that he owed no duty to the deceased.

Assuming, without deciding, that plaintiff's forecast of evidence tended to show that defendant Capers was the deceased's employer, plaintiff has no cause of action in the general courts of justice unless she has also forecast evidence that would allow her to bring an action outside the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-1 to -101 (1991 and Supp. 1993). If the death can only be considered accidental, the trial court properly granted summary judgment because Dennis Canady's death would fall within the exclusive coverage of the Act, and there are no other remedies available to plaintiff against the deceased's employer. *Woodson v. Rowland*, 329 N.C. 330, 337, 407 S.E.2d 222, 226 (1991). If the forecast of evidence is sufficient to show that Canady's death was the result of an intentional tort committed by Capers, then summary judgment was improperly allowed because Capers' intentional tort will support a civil action. *Id.*

The *Woodson* case adopted for North Carolina the substantial certainty test:

[W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Id.* at 340-41, 407 S.E.2d at 228.

Applying the *Woodson* principles to the case at bar, we must determine whether plaintiff's forecast of evidence is sufficient to show that defendant Capers intentionally engaged in misconduct knowing it was substantially certain to cause serious injury or death. The *Woodson* Court explained the continuum of tortious conduct as follows:

The most aggravated conduct is where the actor actually intends the probable consequences of his conduct. One who intentionally engages in conduct knowing that particular results are substantially certain to follow also intends the results for purposes of tort liability. Restatement (Second) of Torts § 8A and comment b (1965) (hereinafter "Rest. 2d of Torts"). "[I]ntent is broader than a desire to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 8, at 35 (5th ed. 1984) (hereinafter "Prosser"). This is the doctrine of "constructive intent." "As the probability that a [certain] consequence will follow decreases, and becomes less than substantially certain, the actor's conduct loses the character of intent, and becomes mere recklessness. . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence." Rest. 2d of Torts § 8A, comment b.

*Id.* at 341, 407 S.E.2d at 228-29. Substantial certainty requires more than a mere possibility or substantial probability of serious injury or death. *See id.* at 345, 407 S.E.2d at 231.

In the instant case, plaintiff's forecast of evidence does not persuade us that defendant Capers engaged in misconduct *knowing* that it was substantially certain to cause serious injury or death. There is

no doubt that defendant Capers' actions in furnishing alcohol to the deceased while he was re-roofing a house were inappropriate. Nevertheless, plaintiff's evidence is insufficient to show that defendant Capers knew that it was substantially certain when he provided the alcohol to the deceased that he would suffer serious injury or death.

## II.

**[2]** In the alternative, plaintiff alleges that, even if Lyndon Young were an independent contractor, summary judgment was improper because defendant Capers' actions were willful and wanton. Assuming, again without deciding, that Young were a contractor rather than an employee of defendant Capers, defendant Capers is still entitled to summary judgment. Willful and wanton conduct is conduct which shows either a deliberate intention to harm, or an utter indifference to, or conscious disregard for, the rights or safety of others. *Siders v. Gibbs*, 31 N.C. App. 481, 485, 229 S.E.2d 811, 814 (1976). We believe that, if proven, defendant Capers' actions, in furnishing alcohol to the deceased while he was re-roofing a house on a cold and windy December day, may have risen to a level constituting willful and wanton behavior.

Despite this, however, we are constrained to hold that the deceased's own negligence in consuming the alcohol while working on a roof rose to the same level of negligence as that of defendant Capers and thus bars plaintiff's claim. *See Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 332 N.C. 645, 423 S.E.2d 72 (1992) (even though plaintiff's allegations in a negligence claim against the provider of alcohol establish more than ordinary negligence on the part of defendant, plaintiff's claim is barred since the allegations also establish a similarly high degree of contributory negligence on the part of the decedent for voluntarily consuming alcohol and then driving while intoxicated). Accordingly, we hold that, as a matter of law, the deceased's contributory negligence bars plaintiff's claim, and that the trial court properly granted summary judgment.

## III.

**[3]** In addition, plaintiff argues that she may proceed to trial on her claim that, even if Young were a contractor, defendant Capers breached non-delegable duties of safety owed to plaintiff's deceased. Generally, one who employs an independent contractor is not liable for an independent contractor's negligence unless the employer retains the right to control the manner in which the contractor per-

forms his work. *Woodson*, 329 N.C. at 350, 407 S.E.2d at 234. However, as an exception to this rule, plaintiff may recover from defendant Capers for breaches of non-delegable duties of safety, if the roofing activity was an "inherently dangerous activity." *See Id.*

Our Supreme Court has held as a matter of law that certain activities, such as building construction, resulting in injury are not inherently dangerous. *See Vogh v. Geer,* 171 N.C. 672, 88 S.E. 874 (1916). This Court in *Olympic Products Co. v. Roof Systems, Inc.,* ruled that re-roofing a building is not inherently dangerous so as to fall within those activities considered non-delegable in nature. 88 N.C. App. 315, 334, 363 S.E.2d 367, 378, *disc. review denied,* 321 N.C. 744, 366 S.E.2d 862 (1988). Subsequent to the decision in *Olympic Products, Woodson* altered the rule that certain activities are always inherently dangerous while others may never be, stating that "bright-line rules and mathematical precision are not always compatible with discerning whether an activity is inherently dangerous." *Woodson,* 329 N.C. at 353, 407 S.E.2d at 236.

In light of *Woodson,* we must look at the particular circumstances surrounding the re-roofing of the Middlesex house on 3 December 1989 to determine whether the roofing job was inherently dangerous. Plaintiff's forecast of evidence shows that the deceased, prior to his fall, was operating a circular saw on a steep roof on a cold and windy December day. Tart testified that the weather conditions on 3 December were "kind of tough," that the wind "was gusting real hard," but that he did not feel unsafe on the roof. We do not believe that this forecast of evidence is sufficient to qualify the deceased's job as an inherently dangerous activity. Even if it were, we cannot find in plaintiff's forecast of evidence a causal connection between such activity and the deceased's fall from the roof. Indeed, at the time of the hearing, plaintiff was unable to locate anyone who had witnessed the deceased's fall. Accordingly, we overrule this assignment of error. We affirm the trial judge's grant of summary judgment.

Affirmed.

Judges LEWIS and WYNN concur.