# CIRCUIT COURT OF THE CITY OF NORFOLK

Beverlee J. Goforth

v.

Office Max,
John McCown,
and Consolidated Stores

April 16, 1999

Case No. (Law) L97-2972

BY JUDGE EVERETT A. MARTIN, JR.

At the beginning of the trial of this action there were three defendants: John McCown, Consolidated Stores, and Office Max. The plaintiff took a nonsuit as to McCown just after the case was called. At the conclusion of the plaintiff's evidence, the Court granted Consolidated Store's motion to strike and also struck the plaintiff's claim for punitive damages against Office Max. The Court overruled Office Max's motion to strike on the claims of *respondeat superior* and negligent hiring.

At the conclusion of all the evidence, Office Max renewed its motion to strike. The Court sustained the motion on *respondeat superior* but overruled it on negligent hiring and retention, and the case was submitted to the jury on those issues. The jury returned a substantial verdict for the plaintiff. Office Max then moved to set aside the verdict as being contrary to the law and the evidence, which motion the Court overruled because counsel for Office Max stated he did not wish to submit a brief.

The Court entered judgment on the jury verdict on January 25, 1999. On February 11, 1999, the Court entered an order suspending the judgment to allow the parties to submit briefs on Office Max's motions for a new trial or summary judgment.

The Court is allowed to enter judgment *non obstante veredicto* under Code of Virginia § 8.01-430 "upon the ground that it is contrary to the evidence, or without evidence to support it." In ruling on the motion, the Court must construe the evidence in the light most favorable to the party in whose favor the jury found. *Lane* v. *Scott*, 220 Va. 578, 260 S.E.2d 238 (1979).

### The Big Lots Incident

Office Max has three grounds for its motion concerning the incident in Big Lots: (i) it owed no duty to Goforth for the criminal act McCown committed against her in Big Lots; (ii) the hiring of McCown as an electronics department salesman was not negligent; and (iii) the hiring of McCown, even if negligent, was not the proximate cause of Goforth's injury. The existence of a legal duty is a question of law for the Court. *A.H.* v. *Rockingham Publishing Co.*, 255 Va. 216, 220, 495 S.E.2d 482, 485 (1998). Negligence and proximate cause are ordinarily questions of fact. *Atkinson* v. *Scheer*, 256 Va. 488, 453-54, 508 S.E.2d 68, 71 (1998). I shall assume, without deciding, that Office Max was negligent in hiring McCown, that he did at Big Lots what Goforth testified he did, and that such conduct was reasonably foreseeable. Nonetheless, I find that Office Max had no legal duty to Goforth when McCown battered her in Big Lots.

There is no dispute that Goforth was an invitee of Big Lots on September 2, 1995, the day McCown committed the battery against her, and that the battery occurred on the premises of Big Lots. (Motion for Judgment, paragraphs 11 through 14; Transcript, pages 279-80, 336.) Office Max and Big Lots are adjoining stores. (Tr. p. 291.) McCown was an employee of Office Max that day (Tr. pp. 110, 132), and he periodically went to Big Lots on his breaks to look at women. (Tr. p. 123.) The plaintiff had been an Office Max

customer in the past (Tr. p. 305), but there was no evidence she ever met McCown while in Office Max or in any manner connected with his employment. (Tr. p. 346.)

In all the Virginia cases finding negligent hiring, there has been some connection among the plaintiff, the tortfeasor, and the conduct of the employer's business, even though the employee's acts may have been beyond the scope of his employment. In *Davis* v. *Merrill*, 133 Va. 69, 112 S.E. 628 (1922), a railway gateman shot an occupant of a car that passed over the railway's tracks after the employee raised the gate. In *Infant C.* v. *Boy Scouts of Am.*, 239 Va. 572, 391 S.E.2d 322 (1990), a scoutmaster sexually abused a scout in his troop. In *J.* v. *Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391 (1988), a church employee sexually abused a young girl both on and off the church's property. The Court's recitation of the facts there states that the plaintiff alleged the employee "was hired and entrusted with duties that encouraged him to come freely into contact with children ... that [he] came into contact with plaintiff's daughter at church, where on one or more occasions he had intercourse with her." 236 Va. at 207, 372 S.E.2d at 392.

The plaintiff argues that *Victory Tabernacle* held that no such connection need exist for a cause of action of negligent hiring. I do not so read that case. The "nexus" the defendant argued for there was scope of employment. 236 Va. at 210-11, 372 S.E.2d at 394. The Court held that an employer could be liable for an intentional tort of the negligently hired employee that was beyond the scope of his employment. The Court did not hold that the employer who negligently hires an employee is an insurer of the employee's behavior or owes a duty to the world.

In *Southeast Apartments Management, Inc.* v. *Jackman*, 257 Va. 256 (1999), a negligent hiring and retention case in which the existence of a duty was not at issue, but in which the Court found no negligence on the part of the employer, the Court quoted from *Ponticas* v. *K.M.S. Investments*, 331 N.W.2d 907 (Minn. 1983), on the nature of liability for negligent hiring:

> Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, *because of the circumstances of the employment,* it should have been foreseeable that the hired individual posed a threat of injury to others.

257 Va. at 260 (emphasis added).

Indeed, in the two cases the plaintiff cites from other states, there was a connection among the plaintiff, the employee, and the conduct of the defendant's business. In *Coath* v. *Jones,* 277 Pa. Super. 479, 419 A.2d 1249 (1980), a discharged employee raped a customer in her home. The assailant had visited the plaintiff's home on several occasions on the defendant's business before his discharge. On the date of the rape, the former employee represented to the plaintiff that he was there on the defendant's business. The Pennsylvania court's decision rested both on negligent hiring and a duty to warn the customer of the employee's discharge. The latter issue is not present in this case. In *Harvey Freeman & Sons, Inc.* v. *Stanley,* 259 Ga. 233, 378 S.E.2d 857 (1989), one of the tortfeasors was the resident manager of the defendant's apartment building and the sexual abuse to the children of tenants occurred both on and off the defendant's premises. The Court noted that an earlier case "acts to shield employers from liability for those torts his employee commits on the public in general," 378 S.E.2d at 858, and it then observed that the relationship between the plaintiffs and the tortfeasor began because of the tortfeasor's employment.

No Virginia case addresses the facts necessary for a duty to exist from the employer to the third party, but opinions of other state courts, a treatise, and a law review article do. Some of the cases discuss this in relation to proximate cause, not duty. *Baugher* v. *A. Hattersley & Sons, Inc.,* 436 N.E.2d 126 (Ind. App. 1982), held the employer owed no duty to the plaintiffs as they were not its customers, patrons, or invitees. The employee, a shop manager, had invited the plaintiffs to breakfast and drove them in his company truck. He stopped at his employer's office, ordered the plaintiffs into the building at gunpoint, and raped them. The Court in *Schmidt* v. *HTG, Inc.,* 265 Kan. 372, 961 P.2d 677 (1998), reviewed several Kansas cases and noted that a duty arose when the injured party was a co-worker or customer and the act occurred on the employer's premises during the time employment services were normally rendered. The Court noted that employers had never been found liable when "the injurious action [was] removed from the employer's premises or without any nexus to the employer's operations." 961 P.2d at 695. See also *Marquay* v. *Eno,* 139 N.H. 657, 662 A.2d 272 (1995); *Ponticas* v. *K.M.S. Investments, supra; Yunker* v. *Honeywell, Inc.,* 496 N.W.2d 419 (Minn. App. 1993); *Dieter* v. *Baker Service Tools,* 739 S.W.2d 405 (Tex. Ct. App. 1987); *F & T Co.* v. *Woods,* 92 N.M. 697, 594 P.2d 745 (1979); *Bates* v. *Doria,* 150 Ill. App. 3d 1025, 104 Ill. Dec. 191, 502 N.E.2d 454 (1986).

The *Restatement (Second) of Agency* (1958) states in § 213:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless ... .

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others:

Comment d to this section provides in part:

An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal, without exercising due care in selection, employs a vicious person *to do an act which necessarily brings him in contact with others while in the performance of a duty*, he is subject to liability for harm caused by the vicious propensity.

(Emphasis added.)

In "Employer Liability for the Criminal Acts of Employees Under Negligent Hiring Theory," 68 *Minnesota Law Review* 1303 (1984), an article the Supreme Court of Virginia cited in *Victory Tabernacle*, the author noted that three factors were usually present in cases finding a duty to third persons. First, the plaintiff and the employee were both rightfully in the place the tort occurred. Second, the plaintiff met the employee as a direct result of his employment. Third, the employer must have received some benefit, even if only potential or indirect, from the meeting. 68 *Minnesota Law Review* at 1309.

I need not decide in this case what circumstances are necessary under Virginia law to impose a duty on an employer for negligent hiring because none of the factors other courts have relied on are present except Goforth's and, perhaps, McCown's rights to have been in Big Lots. The tort did not occur on the premises of Office Max; Goforth was not an Office Max customer, patron, or invitee when McCown battered her; Goforth and McCown were not co-workers; they had never before met; Office Max had no potential benefit from their meeting. There is not even any evidence that Office Max knew before September 2, 1995, what McCown was doing in Big Lots on his breaks. (Tr. pp. 72, 125, 390.)

*The Office Max Incident*

There remains what, if any, liability Office Max has for the encounter between Goforth and McCown at Office Max about a week later. The Court in *Victory Tabernacle* distinguished *respondeat superior* from negligent hiring. The former is vicarious liability under which the employer is held liable for the torts of the employee. The latter is primary liability, that is, the employer is liable for placing an unfit employee in a situation involving an unreasonable risk of harm to others. 236 Va. at 211, 372 S.E.2d at 394. See also Friend, *Personal Injury Law in Virginia*, § 9.2 (2nd ed. 1998). The same distinction should apply between *respondeat superior* and negligent retention.

Liability for negligent retention arises not solely from knowledge the employer had or should have had at the time the employee was hired, but also from the employer's knowledge of acts the employee committed after his hiring. Given Office Max's knowledge of both McCown's criminal record (Tr. pp. 116-18, 388-89) and his conduct toward Goforth in Big Lots (Tr. pp. 73-4), there was sufficient evidence for the jury to find that Office Max negligently retained McCown and that future misconduct was foreseeable. Office Max certainly owed a duty to Goforth while she was its invitee.

The evidence at trial showed that Goforth went to Office Max that day in the company of Angela Bennett. They saw McCown in the store and he "kept getting closer and closer" to them and following them as they went down different aisles. (Tr. p. 285.) Bennett and Goforth testified "It was like he was stalking [Goforth]." (Tr. pp. 285, 320.) Goforth testified that after she and McCown saw each other "he raised his arms like this and started walking towards me, walking not briskly but purposefully." (Tr. p. 320.) The record does not state, nor do I recall, Goforth's arm movements in showing the jury how McCown raised his arms. I do not, however, recall the movement to have been threatening.

McCown peeked at Goforth around corners and at the end of aisles. (Tr. pp. 320-21.) He made facial and body gestures toward her, but no hand motions. (Tr. p. 338.) He never got closer than six to ten feet from her. (Tr. pp. 320, 338.) McCown never said anything to or touched Goforth. (Tr. pp. 337-38.) She testified she was afraid he would assault her again. (Tr. p. 322.)

In tort cases in Virginia, damages for emotional distress alone may not be recovered in the absence of physical impact unless there is a cause of action for an intentional tort existing independently of the emotional harm or the conduct is willful and wanton. *Hughes* v. *Moore*, 214 Va. 27, 197 S.E.2d 214 (1973); *Fairfax Hospital* v. *Curtis*, 254 Va. 437, 445-46, 492 S.E.2d 642, 647 (1997).

Goforth has no independent cause of action against Office Max for an intentional tort arising out of this incident, and Office Max's conduct in retaining McCown, although arguably negligent, was not willful and wanton.

By definition, the employer's conduct in a negligent retention case will have been only negligent; it will rarely be willful and wanton. In most negligent retention cases, the employee will have committed a battery against the plaintiff and the physical impact rule will not apply. However, where the employee commits no battery, a limitation of employer liability in a negligent retention case to only the employer's acts would, because of the physical impact rule, render the employer immune from liability for a negligently retained employee's assault of a customer beyond the scope of his employment. This would frustrate the very purpose of the cause of action. Thus I believe it is also necessary in this type of case to determine whether the employee's act is an independent intentional tort or willful and wanton.

Goforth claims McCown committed four acts against her in Office Max: intentional infliction of emotional distress, negligent infliction of emotional distress, stalking, and assault. One of the elements of intentional infliction of emotional distress is outrageous and intolerable behavior. *Womack* v. *Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974); *Russo* v. *White*, 241 Va. 23, 400 S.E.2d 160 (1991). McCown's conduct toward Goforth in Office Max falls well short of outrageous and intolerable behavior as defined in those cases. The physical impact rule would bar a claim of negligent infliction of emotional distress against McCown.

Stalking was first made a crime in Virginia by 1992 Acts of Assembly, c. 888. The General Assembly did not and has not enacted a private right of action for stalking, and none exists at common law. Assuming McCown's actions in Office Max violated Code of Virginia § 18.2-60.3, they are not *ipso facto* tortious. *Vansant and Gusler, Inc.* v. *Washington*, 245 Va. 356, 429 S.E.2d 31 (1993); Prosser and Keeton, *Law of Torts*, § 2 (5th ed. 1984). Even though negligent hiring is primary and not vicarious liability, it seems incongruous that an employer could be liable based on conduct of an employee when the employee himself would not be civilly liable. There is no independent cause of action for stalking, and the actions of McCown in Office Max were not willful and wanton as defined in *Infant C.*, 239 Va. at 580-82, 391 S.E.2d at 327.

The tort of assault in Virginia is "any threatening act that puts another person in reasonable fear of physical injury." *Virginia Model Jury Instructions - Civil*, No. 36.010. It is not necessary that the defendant have the intent or present ability to commit a battery. It is only necessary that he have the intent

to put the plaintiff in fear of physical injury and an apparent ability and opportunity to commit a battery. The defendant's act must be one that would cause fear in a reasonable, not a timorous, person. There can be no assault if the defendant is too far away to commit a battery. Friend, *Personal Injury Law in Virginia*, §§ 6.3, 6.3.1 (2d ed. 1998); Groot, *Criminal Offenses and Defenses in Virginia*, p. 21 (2d ed. 1983).

McCown's following Goforth through the store, looking at her around corners, and making facial gestures do not constitute an assault. However, viewing the evidence from the cold printed page in the light most favorable to Goforth, McCown could have been only nine feet from Goforth when he raised his arms and began to walk toward her. (Tr. pp. 284, 320.) I cannot say, as a matter of law, that this conduct could not be an assault. Assault being an independent cause of action, damages for emotional disturbance without physical injury may be recovered.

As the jury was improperly allowed to find Office Max liable for McCown's battery of Goforth in Big Lots and as that incident undoubtedly had a material influence in the jury's determination of damages, the verdict is set aside and a new trial ordered on Office Max's liability, if any, for the incident in Office Max and damages. *Rawle* v. *McIlhenny*, 163 Va. 735, 750-51, 177 S.E. 214, 221 (1934).