TERI HARVEY LITTLE AND FRANK DONALD LITTLE, JR., PLAINTIFFS v. OMEGA MEATS I, INC., THOMAS A. CASSANO, AND RONALD LEE SMITH, DEFENDANTS

No. COA04-154

(Filed 19 July 2005)

**Employer and Employee— negligent hiring and retention— directed verdict—independent contractor—duty of care— proximate cause**

The trial court did not err by directing a verdict for defendant company and its president in an action for negligent hiring and retention of an independent contractor salesman who was employed by defendant company to sell meat door to door and who broke into plaintiffs' home and assaulted, kidnapped, and robbed them after he drove into the neighborhood in a company truck because defendants did not owe plaintiffs a duty of care,

even though they knew the salesman had previously been convicted of common law robbery and kidnapping, where: (1) the salesman was not in a place where he had a legal right to be since he broke into plaintiffs' home; (2) the salesman and plaintiffs did not meet as a direct result of the salesman's relationship with defendants since he did not enter plaintiff's home as a salesman; and (3) defendants received no direct, indirect or potential benefit from the "meeting" between the salesman and plaintiffs. Assuming arguendo that defendants breached a duty to plaintiffs and were negligent in hiring the salesman, this negligence was not a proximate cause of plaintiffs' injuries because the salesman's association with defendants did not advance his criminal endeavor in any manner.

Judge GEER dissenting.

Appeal by plaintiffs from judgment entered 20 August 2003 by Judge Michael E. Helms in Guilford County Superior Court. Heard in the Court of Appeals 22 September 2004.

*Schoch and Schoch by Arch K. Schoch IV and Arch K. Schoch V for plaintiff-appellants.*

*Horton and Gsteiger, P.L.L.C. by Urs R. Gsteiger for defendant-appellees.*

STEELMAN, Judge.

Plaintiffs Frank and Teri Little resided in a single-family residence in the City of Greensboro. About midday on 23 March 2001, Frank was at work and Teri had left the residence to take a walk in a nearby neighborhood. While the Littles were gone from their residence, defendant Smith (Smith) drove into the Littles' neighborhood, operating a refrigerated Omega Meats truck. Smith parked the truck in the driveway of the Littles' next door neighbor, and proceeded to break into the side entrance of the Littles' residence. While Smith was still inside, Teri returned to the home and went inside. She was attacked by Smith, handcuffed and robbed. Approximately twenty to thirty minutes later, Frank also returned home. Smith then further assaulted Teri, bound Frank, and attempted to asphyxiate him with a plastic bag. As Smith began to sexually assault Teri, Frank freed himself and grabbed a knife. A struggle ensued over the knife, during which Teri was able to flee from the home. Realizing that one of his victims had escaped, Smith fled from the Littles' residence and drove

**LITTLE v. OMEGA MEATS I, INC.**

[171 N.C. App. 583 (2005)]

off in the Omega Meats truck. Smith was subsequently convicted of several counts of kidnapping, felony assault, robbery, and felonious breaking and entering. *See State v. Smith*, 160 N.C. App. 107, 584 S.E.2d 830 (2003).

Defendant Omega Meats I, Inc. (Omega) sells meat products using independent contractor salesmen. Defendant Thomas A. Cassano (Cassano) is the president of Omega. Salesmen rent refrigerated trucks from Omega on a daily basis, and attempt to sell consigned meats to customers, door to door. At the end of the day, the salesman pays Omega for the truck rental, and for any meat sold. Once a salesman leaves Omega's warehouse, he is not supervised or controlled by Omega. Each salesman develops his own customers and decides where to drive the truck to service his existing customers or attempt to acquire new customers.

Smith first worked for Omega in 1997. Prior to beginning work as an independent contractor salesman, Omega performed a driver's licence check on Smith, but did not perform a criminal background check. Had a criminal background check been performed, it would have revealed that Smith had numerous convictions, including drug offenses and assault. During his first period as a salesman for Omega, Smith was convicted of common law robbery and kidnapping, and served an active prison sentence of 26 months. Following Smith's release from prison, he went back to work for Omega as an independent contractor salesman. It was during Smith's second term with Omega that the incident with the Littles occurred.

This action was initiated on 21 February 2002, seeking damages for personal injury and punitive damages from defendants Omega, Cassano and Smith arising out of the events of 23 March 2001. The claims against Omega and Cassano were for negligent hiring and retention of Smith as a salesman. This matter came on for trial before the Honorable Michael E. Helms and a jury at the 11 August 2003 session of Civil Superior Court for Guilford County. The plaintiffs' claims against Omega and Cassano were severed from the claims against Smith, and only the claims against Omega and Cassano were tried before Judge Helms. At the conclusion of the plaintiffs' evidence, defendants Omega and Cassano moved for a directed verdict pursuant to Rule 50(a) of the North Carolina Rules of Civil Procedure. This motion was granted, and the trial court dismissed plaintiffs' claims against Omega and Cassano. The trial court certified its judgment pursuant to Rule 54(b) for immediate appeal. Plaintiffs appeal.

In plaintiffs' sole assignment of error they argue that the trial court erred in directing verdict in favor of defendants Omega and Cassano because the evidence presented was sufficient for the case to be submitted to the jury on the issue of defendants' negligence in hiring and retaining Smith. We disagree.

> A motion for directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury. In ruling on a defendant's motion for directed verdict, the trial court must take plaintiff's evidence as true, considering plaintiff's evidence in the light most favorable to him and giving him the benefit of every reasonable inference. Defendant's motion for a directed verdict should be denied "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." Given these principles it is clear that a defendant in a negligence action is not entitled to a directed verdict unless the plaintiff has failed, as a matter of law, to establish the elements of actionable negligence.

*McMurray v. Surety Federal Sav. & Loan Asso.*, 82 N.C. App. 729, 730, 348 S.E.2d 162, 164 (1986) (citations omitted). "Negligence has been defined as the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them. The traditional elements of actionable negligence are the existence of a legal duty or obligation, breach of that duty, proximate cause and actual loss or damage." *Id.* at 731, 348 S.E.2d 162, 164.

We agree with plaintiffs that Smith's relationship with Omega was that of an independent contractor and not an employee. "Generally, one who employs an independent contractor is not liable for the independent contractor's [acts]." *Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000). However, in certain limited situations an employer may be held liable for the negligence of its independent contractor. Such a claim is not based upon vicarious liability, but rather is a direct claim against the employer based upon the actionable negligence of the employer in negligently hiring a third party. *Id.* at 375, 533 S.E.2d at 491-92, *citing Woodson v. Rowland*, 329 N.C. 330, 352, 407 S.E.2d 222, 235 (1991) ("The party that employs an independent contractor has a continuing responsibility to ensure that adequate safety precautions are taken. . . . The employer's liability for breach of this duty 'is direct and not derivative . . . .' "). Because plaintiff's claim against Omega is a direct claim, there must be a legal duty

LITTLE v. OMEGA MEATS I, INC.

[171 N.C. App. 583 (2005)]

owed by the employer to the injured party in order to establish the claim for negligent hiring. Once that duty is established then the plaintiff must prove four additional elements to prevail in a negligent hiring and retention case: "(1) the independent contractor acted negligently; (2) he was incompetent at the time of the hiring, as manifested either by inherent unfitness or previous specific acts of negligence; (3) the employer had notice, either actual or constructive, of this incompetence; and (4) the plaintiff's injury was the proximate result of this incompetence." *Kinsey v. Spann,* 139 N.C. App. 370, 377, 533 S.E.2d 487, 493 (2000), *citing Medlin v. Bass,* 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990). Most of our cases dealing with negligent hiring of an independent contractor have turned upon the third element, whether the employer had actual or constructive notice of the incompetence of the independent contractor. *Kinsey,* 139 N.C. App. 370, 533 S.E.2d 487 (holding defendant had no notice of her nephew's incompetence in tree removal); *Woodson,* 329 N.C. 330, 407 S.E.2d 222 (holding that a general contractor did not have notice of subcontractor's practices which led to a trench cave-in); *Medlin,* 327 N.C. 587, 398 S.E.2d 460 (holding that defendant school system did not have notice of a principal's pedophilic tendencies). Since these cases turned on the notice question, they do not contain any significant discussion of the duty owed by the employer to the plaintiff.

However, other cases make it clear that there must be a duty owed by the employer to the plaintiff in order to support an action for negligent hiring. In the leading case of *Page v. Sloan,* 281 N.C. 697, 702, 190 S.E.2d 189, 192 (1972) *(citing* 40 Am. Jur. 2d, Hotels, Motels and Restaurants § 81), our Supreme Court stated that the "duties thus imposed upon an innkeeper for the protection of his guests 'are non-delegable, and liability cannot be avoided on the ground that their performance was entrusted to an independent contractor.'" In *Kinsey,* this Court stated that in cases where the independent contractor engages in ultra-hazardous or inherently dangerous work, that "the employer has a non-delegable duty for the safety of others." *Kinsey,* 139 N.C. App. at 374, 533 S.E.2d at 491, *citing Canady v. McLeod,* 116 N.C. App. 82, 88, 446 S.E.2d 879, 883 (1994).

The nature and extent of the duty owed by the employer to injured parties in negligent hiring cases has not been described with great precision in the case law of North Carolina to date. However:

Most jurisdictions accepting the theory of negligent hiring have stated that an employer's duty to select competent employees extends to any member of the general public who comes into con-

**LITTLE v. OMEGA MEATS I, INC.**

[171 N.C. App. 583 (2005)]

tact with the employment situation. Thus, courts have found liability in cases where employers invite the general public onto the business premises, or require employees to visit residences or employment establishments. One commentator, in analyzing the requisite connection between plaintiffs and employment situations in negligent hiring cases, noted three common factors underlying most case law upholding a duty to third parties: (1) the employee and the plaintiff must have been in places where each had a right to be when the wrongful act occurred; (2) the plaintiff must have met the employee as a direct result of the employment; and (3) the employer must have received some benefit, even if only potential or indirect, from the meeting of the employee and the plaintiff.

*Cindy M. Haerle*, 68 Minn. L. Rev. 1303, 1308-09, *MINNESOTA DEVELOPMENTS: Employer Liability for the Criminal Acts of Employees Under Negligent Hiring Theory: Ponticas v. K.M.S. Investments* (1984) (citation omitted) (emphasis added). Courts in other jurisdictions have generally, though not exclusively, declined to hold employers liable for the acts of their independent contractors or employees under the doctrine of negligent hiring or retention when *any one* of these three factors was not proven. *Id. See also McLean v. Kirby Co.*, 490 N.W.2d 229 (N.D., 1992); *Baugher v. A. Hattersley & Sons, Inc.*, 436 N.E.2d 126, 129 (Ind. Ct. App., 1982); *Parry v. Davidson-Paxon Company*, 73 S.E.2d 59 (Ga. Ct. App., 1952); *Goforth v. Office Max*, 48 Va. Cir. 463, 467 (Va. Cir. Ct., 1999). It is only after a plaintiff has established that the defendant owed a duty of care that the trial court considers the other elements necessary to establish a claim for negligent hiring or retention of an independent contractor. *See* 68 Minn. L. Rev. 1303, 1308, *supra* ("Thus, to be liable the employer must first owe the plaintiff a duty of care.").

In the instant case Smith was not in a place where he had a legal right to be since he broke in to plaintiffs' home; Smith and plaintiffs did not meet as a direct result of Smiths' relationship with defendants, since he did not enter plaintiffs' home as a salesman; finally, defendants received no benefit, direct, indirect or potential, from the tragic "meeting" between Smith and plaintiffs. We have found no authority in North Carolina suggesting that defendants owed plaintiffs a duty of care on these facts, and we hold that in fact none existed.

We refuse to make employers insurers to the public at large by imposing a legal duty on employers for victims of their independent

contractors' intentional torts that bear no relationship to the employment. We note that because this is a direct action against the employer, for the purposes of this appeal the result would be the same if Smith had been an employee of defendants instead of an independent contractor. Smith could have perpetrated the exact same crimes against these plaintiffs, in the exact same manner, and with identical chances of success, on a day that he was not selling Omega's meats and driving Omega's vehicle.

Because Omega did not owe plaintiffs a duty of care, plaintiffs had no legal cause of action against Omega grounded in negligent hiring or retention. Having so held, we must further hold that the same reasoning applies to defendant Cassano. Therefore, the trial court properly granted defendants' motion for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. Our holding should not be interpreted as limiting employers' duties to third parties in negligent hiring or retention claims to duties that are non-delegable. What is required, however, is a nexus between the employment relationship and the injury.

Assuming *arguendo* that defendants did owe plaintiffs a duty of care, we further hold there was insufficient evidence, taken in the light most favorable to plaintiffs, to prove that any negligence on the part of defendants was the proximate cause of plaintiffs' injuries.

> "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new or independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." Thus, it is axiomatic that proximate cause requires foreseeability.

*Johnson v. Skinner*, 99 N.C. App. 1, 7-8, 392 S.E.2d 634, 637 (1990) (internal citations omitted). Plaintiffs argue that "it was foreseeable to defendants that sending a person such as Smith, with his recent, as well as long, record and propensity for violence, into residences could and likely would create an unreasonable risk of harm." In support of this contention they cite the North Dakota Supreme Court case of *McLean v. Kirby Co.*, 490 N.W.2d 229 (N.D., 1992). While plaintiffs may be correct in their assertion that sending Smith into residences could foreseeably create an unreasonable risk of harm, the foreseeability of a risk of harm is insufficient unless defendants'

negligent hiring or retention of Smith in some manner *actually caused* the injury in question.

In *McLean*, the victim "let Molachek into her apartment to demonstrate [defendant's] vacuum cleaner. Molachek also brought with him a set of knives, provided by the distributor, as a 'door opener' or 'gift offering' for allowing the in-home demonstration. After beginning the demonstration, Molachek used the knives in assaulting and raping [the victim]." *McLean*, 490 N.W.2d at 232. In *McLean*, defendant's independent contractor was invited into the victim's home as a direct result of his position as a representative of defendant. Further, he accomplished the assault and rape by utilizing knives provided to him by the defendant. The facts in *McLean* support a finding of proximate cause arising out of the employment or independent contractor relationship. This is not true in the instant case. As discussed above, though Smith was driving an Omega truck, his association with defendants did not advance his criminal endeavor in any manner. The same result would have occurred had he not been driving an Omega truck.

Therefore, even assuming *arguendo* that defendants were negligent in hiring Smith, this negligence was not the proximate cause of plaintiffs' injuries. The trial court correctly granted defendants' motion for directed verdict. This assignment of error is without merit.

AFFIRMED.

Judge CALABRIA concurs.

Judge GEER dissents.

GEER, Judge, dissenting.

The fundamental question presented by this case is whether defendants may be held liable for the torts of their independent contractor, Ron Smith. While the general rule in North Carolina "is that an employer or contractee is not liable for the torts of an independent contractor committed in the performance of the contracted work," *Page v. Sloan*, 12 N.C. App. 433, 439, 183 S.E.2d 813, 817 (1971), *aff'd*, 281 N.C. 697, 190 S.E.2d 189 (1972), our Supreme Court has held that "[a] third party not contractually related to and injured by an incompetent or unqualified independent contractor may proceed against one who employed the independent contractor on the

**LITTLE v. OMEGA MEATS I, INC.**

[171 N.C. App. 583 (2005)]

theory that the selection was negligently made." *Woodson v. Rowland*, 329 N.C. 330, 358, 407 S.E.2d 222, 239 (1991).

I believe that plaintiffs' evidence was sufficient to permit the jury to find that defendants negligently selected Ron Smith because he was unqualified to serve as a salesman going door to door in residential neighborhoods given his convictions for common law robbery, second degree kidnapping, and unlawful possession of a firearm by a felon. I would, therefore, reverse the trial court's order directing a verdict in defendants' favor. For that reason, I dissent.

The Supreme Court in *Woodson* cited *Page v. Sloan*, 281 N.C. 697, 190 S.E.2d 189 (1972) as support for allowing a negligent hiring claim with respect to independent contractors. In *Page*, the Court held that "[i]f defendants knew, or in the exercise of due care should have known, that [the independent contractor] was not competent to do such work and if the [independent contractor's] negligence was a proximate cause of the explosion and ensuing death of plaintiff's testate, defendants would be liable." *Id.* at 703, 190 S.E.2d at 193.

Ten years later, this Court relied upon language in the underlying Court of Appeals decision in *Page* as "controlling" on the question "whether there is any cause of action for the negligent hiring of an independent contractor." *Deitz v. Jackson,* 57 N.C. App. 275, 277, 291 S.E.2d 282, 284 (1982). The Court quoted:

> "[A] condition prescribed to relieve an employer from liability for the negligent acts of an independent contractor employed by him is that he shall have exercised due care to secure a competent contractor for the work. Therefore, if it appears that the employer either knew, or by the exercise of reasonable care might have ascertained that the contractor was not properly qualified to undertake the work, he may be held liable for the negligent acts of the contractor. . . ."

*Id.* at 277-78, 291 S.E.2d at 284-85 (quoting *Page,* 12 N.C. App. at 439, 183 S.E.2d at 817). In *Deitz,* the Court then held that an employer of a general contractor "may be subject to liability for an injury done to a plaintiff as a proximate result of the [employer's] negligence in hiring an independent contractor to perform [the contracted-for] work." *Id.* at 278, 291 S.E.2d at 285.

Based on this authority, I believe that our courts have already established a duty on the part of employers of independent contractors and that the majority opinion's conclusion that there is no duty

in this case—as a matter of law—cannot be reconciled with this authority. Under *Woodson, Page,* and *Deitz,* a plaintiff may establish a claim of negligent hiring of an independent contractor by proving (1) the independent contractor was not qualified or competent to perform the contracted work, (2) the defendant knew or should have known that the independent contractor was not qualified or competent, and (3) the plaintiff was harmed as a proximate cause of the lack of qualification or incompetence.

In order to flesh out these elements, it is appropriate to look to the Restatement (Second) of Torts § 411 (1965), which was adopted by both the Supreme Court and the Court of Appeals in *Page.* That section of the Restatement provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
>
> (b) to perform any duty which the employer owes to third persons.

*Id.* The comments to the Restatement explain that "[t]he words 'competent and careful contractor' denote a contractor who possesses the knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others, *and who also possesses the personal characteristics which are equally necessary.*" *Id.* cmt. a (emphasis added). The Restatement stresses, however, that for liability to exist, it is "necessary that harm shall result from some quality in the contractor which made it negligent for the employer to entrust the work to him." *Id.* cmt. b.

In holding that a showing of these elements is not sufficient in the absence of a separate showing of a "duty," the majority overlooks our Supreme Court's analysis of when a duty is owed. In *Mullis v. Monroe Oil Co.,* 349 N.C. 196, 505 S.E.2d 131 (1998), the Court held:

> A legal duty is owed whenever one person is by circumstances placed in such a position [towards] another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard

to those circumstances he would cause danger of injury to the person or property of the other. Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person in his shoes would recognize unreasonable risk to others from failure to use such care. Risk-creation behavior thus triggers duty where the risk is both unreasonable and foreseeable. . . . [T]he orbit of the danger as disclosed to the eye of reasonable vigilance [is] the orbit of the duty.

*Id.* at 204-05, 505 S.E.2d at 137 (internal citations and quotation marks omitted). A duty arises based on evidence showing that a defendant "should have recognized that [plaintiff], or anyone similarly situated might be injured by their conduct." *Id.* at 205, 505 S.E.2d at 137. This analysis directly parallels the elements for negligent hiring set out in *Woodson, Page, Deitz,* and the Restatement without any further showing. The majority's holding that there must be "a nexus between the employment relationship and the injury" goes to the question of the foreseeability of the risk or, in other words, whether the employer of the independent contractor knew or should have known that the independent contractor created a risk of injury to plaintiff or others similarly situated because of his incompetence or lack of qualifications—precisely the test set out in *Woodson, Page, Dietz,* and the Restatement.

The Restatement provides as an illustration:

1. The A Company sells pianos on the installment plan. It employs the B Company, a collecting agent, to collect the unpaid installments on these pianos. The A Company knows that the B Company's employees are rough and violent and addicted to quarreling with the customers of its clients. The A Company instructs the B Company to collect C's unpaid installments. The B Company sends D, one of its employees, to do so. D gets into an argument with C and in the course of it unjustifiably knocks C down and seriously harms him. *A is subject to liability to C.*

*Id.* cmt. a, illus. 1 (emphasis added). This illustration confirms that these principles of liability apply to an independent contractor's intentional torts as well as to his negligence. I believe that this factual scenario is closely analogous to that presented in this appeal and it demonstrates that the trial court erred in granting a directed verdict.

In this case, plaintiffs offered evidence that Ron Smith had been convicted of common law robbery and second degree kidnapping and

that defendants, prior to hiring Smith, knew not only of these convictions, but also that Smith had only recently been released from prison.[1] Further, following Smith's hiring, defendants learned from Smith's girlfriend, who also worked for Omega Meats, that defendant was convicted of possession of a firearm by a felon. He was arrested on that charge while driving an Omega Meats truck.

Defendant Cassano testified that despite these convictions, he hired Smith as an independent contractor to sell Omega Meats products door-to-door while driving an Omega Meats truck. Salesmen like Smith would pick up an Omega Meats truck from 8:00 a.m. to 11:00 a.m. and then return the truck at some time between 6:00 p.m. to 11:00 p.m. Cassano explained that the salesmen "cold-call," going "from door to door at residences." He acknowledged that Smith "was going to be calling door-to-door at residences" and that he sold and marketed Omega Meat products using an Omega truck.

I believe that a reasonable juror could find that a convicted robber and kidnapper—who also unlawfully carried a firearm while working—did not possess the personal qualities necessary for making cold calls door-to-door in residential neighborhoods. If the jury found that Smith was not competent or qualified to be a door-to-door salesman, then plaintiffs' evidence is also sufficient to establish defendants' actual knowledge of that incompetence. Accordingly, I believe this evidence is sufficient to allow a jury to find defendants negligent in selecting Smith as an independent contractor.

The remaining issue is whether plaintiffs were harmed as a proximate cause of that negligence. Plaintiffs' evidence established that Smith checked out an Omega Meats truck in the morning and that the break-in occurred at mid-day while Smith was still using the Omega Meats truck. Defendants have contended that plaintiffs did not prove causation because they did not offer any evidence that Smith was in fact using the truck at the time of the break-in. Plaintiff Frank Little testified, however, that when he pulled into his driveway, shortly before he was attacked in his home, he noticed a white pickup truck with a freezer that had the logo for Omega Meats on it in his neighbor's driveway. The truck's engine was running. Little was familiar with Omega Meats because salesmen had previously come to his door

---

1. Smith was convicted of those crimes while working for Omega Meats the first time. Defendant Cassano testified that he learned of the convictions when Smith did not return to work. Had Cassano performed a criminal record check, he would also have learned that Smith had been convicted of five assault on a female charges, five indecent exposure charges, and one simple assault charge.

**LITTLE v. OMEGA MEATS I, INC.**

[171 N.C. App. 583 (2005)]

offering to sell meat products. In addition, plaintiffs offered evidence that an Omega Meats truck was impounded by the police from the scene. While it would have been helpful to have evidence that this truck was in fact the truck provided to Smith, a jury could infer from the evidence offered that Smith was using the Omega Meats truck when he committed the break-in.

The question remains whether the injuries to plaintiffs resulting from the break-in and attack were reasonably foreseeable to defendants. As our Supreme Court has noted, "it is only in exceptional cases, in which reasonable minds cannot differ as to foreseeability of injury, that a court should decide proximate cause as a matter of law." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979). I do not believe that this case falls into the exceptional category.

Although the critical issue with respect to proximate cause is the foreseeability of the plaintiffs' injuries, the law does not require that the precise injury be foreseeable to defendants. *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233-34, 311 S.E.2d 559, 565 (1984). Instead, "[t]he test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs, is within the reasonable foresight of the defendant." *Williams*, 296 N.C. at 403, 250 S.E.2d at 258.

In this case, I believe that a jury could conclude—in light of Smith's convictions for robbery, kidnapping, and possession of a firearm (the latter while using an Omega Meats truck)—that it was reasonably foreseeable to defendants that there was a risk that Smith would use the Omega Meats truck as a cover while breaking into homes during the day, at a time when most homeowners would be away from their homes. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998) ("A person of ordinary intelligence should anticipate that an unsuitable dealer [who had previously engaged in sexual misconduct] would pose a risk of harm" in connection with door-to-door sales.). While the jury could also decide that the risk was not foreseeable based either on the convictions or defendants' actual experience with Smith, I do not believe that a court can decide the foreseeability issue as a matter of law given the evidence in this record.

I recognize that this case presents a troubling policy issue. Imposing liability on defendants for hiring Smith despite his criminal record risks chilling defendants and other employers from hiring individuals with criminal records. Without the ability to obtain employ-

ment, rehabilitation becomes nearly impossible. Nevertheless, under the law of North Carolina, hiring is only a problem if the conviction renders the individual unsuitable for the position. For example, few would question that a person convicted of drug offenses would be unsuitable for a position providing access to narcotics. I believe that the evidence in this case is sufficient to permit, but not require, a jury to conclude that Smith was unsuitable for an unsupervised position as a door-to-door salesman.