RULANE GAS COMPANY v. MONTGOMERY WARD & COMPANY, INC.

(Filed 14 December, 1949.)

**1. Sales § 30—Evidence that seller represented that article was safe for use in particular manner when consciously ignorant of defect, held to raise implication of negligence.**

Evidence that the retailer represented that the heater purchased by plaintiff could be safely converted for use with bottled gas by proper adjustment, that the adjustments were made and the heater installed by a service company, and that after fourteen months use there was an explosion, and that immediately thereafter it was ascertained that the automatic cut-off valve had failed in its function to cut off the gas after the pilot light had gone out, *is held* sufficient to be submitted to the jury on the issue of the retailer's negligence, there being evidence that the automatic cut-off valve was in substantially the same condition as when purchased, and there being no evidence to show that its usefulness would have been exhausted in that period.

**2. Same: Negligence § 3—**

The liability of a seller for resulting injuries when he authorizes an article to be used for a specified purpose, when by reason of defective construction injury may be reasonably apprehended from such use, rests upon general principles of negligence and does not arise out of the contract.

**3. Sales § 17—**

The seller of an article manufactured for it by another is subject to the same liability as the manufacturer if the article has been rendered potentially dangerous by defect in the construction of safety devices.

**4. Negligence § 7—**

Insulating negligence relates to proximate cause, and is an intervening act which could not have been reasonably foreseen and which becomes the efficient cause of the injury, and thus breaks the causal connection of the primary negligence.

**5. Same: Sales § 30—**

The evidence tended to show that a service man, upon being called to service a heater after the pilot light had gone out, struck a match after being warned not to do so, causing the gas, which had escaped because of a defect in the automatic cut-off valve, to explode. *Held:* The palpable negligence of the service man could not have been reasonably foreseen by the seller, and therefore his acts constitute intervening negligence insulating as a matter of law any negligence on the part of the seller in representing that the heater was safe for such use when it was consciously ignorant of the defective condition.

STACY, C. J., took no part in the consideration or decision of this case.

APPEAL by Montgomery Ward & Company from *Shuford, Special Judge,* April Term, 1949, of MECKLENBURG. Reversed.

Augusta E. Reis, administratrix of Louis A. W. Reis, deceased, instituted action against Rulane Gas Company to recover damages for the injury and death of her intestate, alleging negligence on the part of the Gas Company in the installation and service of an automatic gas heater, resulting in an explosion with fatal consequences.

Plaintiff Reis, in her complaint, alleged that the negligence of Rulane Gas Company in the respects set out proximately caused the injury complained of. The Rulane Gas Company then moved under G.S. 1-240 that Montgomery Ward & Company, from whom the heater was purchased, be made party defendant, and filed answer denying negligence on its part, and setting up a cross-action against Montgomery Ward & Company for contribution in the event it should be adjudged liable to the plaintiff. In its cross-complaint the Rulane Gas Company alleged that Montgomery Ward & Company was negligent in that under a representation of safety it sold to plaintiff's intestate an automatic gas hot water heater not adapted for use with bottled or other liquefied petroleum gas, and not equipped with proper automatic cut-off valve which would have stopped the flow of gas to the heater when the pilot light was out, and rendered an explosion impossible.

Defendant Montgomery Ward & Company, answering, admitted it sold to plaintiff's intestate a heater which had been manufactured for it by a named manufacturer, but denied that any part of the apparatus was defective when sold, or, if so, that the defect was one capable of detection by ordinary care, and further that any negligence in this respect was not the proximate cause of the explosion and consequent injury but was insulated by the subsequently operating negligence of the defendant Gas Company.

Upon issues submitted, the jury for their verdict found that the injury and death of plaintiff's intestate was caused by the negligence of defendant Rulane Gas Company, and also that this fatal injury was due to "the joint and concurring negligence of defendant Montgomery Ward & Company and the defendant Rulane Gas Company as alleged in the further defense and cross-action of the defendant Rulane Gas Company." Damages were assessed in total sum of $25,000. Judgment was rendered that plaintiff recover of defendant Rulane Gas Company $25,000, and that Rulane Gas Company have judgment over against defendant Montgomery Ward & Company for $12,500. The defendant Rulane Gas Company has paid the amount of the judgment to the plaintiff, and in order to preserve the lien of the judgment for the purpose of enforcing contribution against the defendant Montgomery Ward & Company has had the judgment transferred to a trustee for its benefit. Defendant Montgomery Ward & Company appealed.

*Jones & Small for plaintiff, appellee.*
*Frank H. Kennedy for defendant, appellant.*

DEVIN, J.   The original plaintiff recovered in her action against Rulane Gas Company for the injury and wrongful death of her intestate, and the Gas Company has paid the plaintiff the amount of the judgment. However, Montgomery Ward & Company having been made party defendant, and the allegations in Rulane Gas Company's answer and cross-complaint of joint and concurring negligence having been sustained by the verdict and judgment below, Montgomery Ward & Company has appealed from the judgment decreeing contribution, and brings the case here for review.

We note that the case was instituted and tried below under the original title of *Reis v. Rulane Gas Company,* to which as additional defendant Montgomery Ward & Company was made party, and the issues raised by the pleadings were submitted to the court and jury.   But the case has been brought here under the title of *Rulane Gas Company v. Montgomery Ward & Company.*   While we think, in accord with the practice in this jurisdiction, the original title of a cause should be preserved throughout the litigation, we are not disposed in this case to require alteration of the style under which counsel have brought the case here.   *Pascal v. Transit Co.,* 229 N.C. 435, 50 S.E. 2d 534.

The liability of Rulane Gas Company to the original plaintiff Reis was established and the amount of recovery fixed by the verdict and judgment in the court below.   The question now presented is the propriety of the judgment over against Montgomery Ward & Company for contribution as joint tort-feasor.   The assignment of error chiefly debated by the appellant here was the denial of its motion for judgment of nonsuit on Rulane Gas Company's cross-action.   It was urged that the evidence was insufficient to show negligence on the part of Montgomery Ward & Company proximately contributing to the injury for which recovery was had.

From the evidence offered, it was made to appear that the Rulane Gas Company was engaged in the business of selling the petroleum product known as bottled gas or propane gas and commonly called by the trade name rulane gas, and also in servicing automatic hot water heaters which used rulane gas as a heating agent.   It seems three kinds of gases are used for this purpose, manufactured gas (from coal), natural gas, and rulane gas.   The relative heating value of these gases per cubic foot as measured in British Thermal Units was 555 for manufactured gas, 950 to 1150 for natural gas, and approximately 2550 for rulane gas.   Rulane gas is heavier than air, its specific gravity compared with air being in proportion of 150 to 100, while that of manufactured or natural gas is 65.   So

GAS CO. *v.* MONTGOMERY WARD & CO.

that rulane gas escaping in an enclosed room sinks to the floor and remains undiluted until expelled. It also appears that rulane gas is highly inflammable and in quantity lends itself readily to explosion on ignition.

In May, 1946, Edwin A. Reis purchased from Montgomery Ward & Company for use in the home in which he and Louis A. W. Reis lived an automatic gas hot water heater under representation by the seller that it could be used "with safety" with rulane gas. When the heater was delivered crated, it was discovered that it bore a metal tag on which appeared these words, "Warning—This heater must not be used with bottled gas, butane or other liquefied petroleum gases." Upon observing this warning Reis called Montgomery Ward & Company, and, apparently being assured that the heater could be readily adjusted for the use of rulane gas, called in the Rulane Gas Company, who installed the heater, connected it with the tank, and put it in service. For use of rulane gas a smaller orifice or aperture for the flow of gas to the burner was installed. A small pilot light was kept burning at all times to ignite the flow of gas as regulated by a thermostat. The means of regulating and cutting off the flow of gas consisted of a manually operated cut-off valve, and a thermostat which regulated the flow of gas according to the temperature of the water in the tank in the heater and the amount of heat desired. This heater was also equipped with an automatic cut-off valve so arranged that when the pilot light went out it would automatically close and cut off the flow of gas into the heater. The heater was operated in the Reis home continuously and without accident until 17 July, 1947, when, not having been used that day, at 9 p.m., it was discovered the heater was cold and burner and pilot lights out. Louis A. W. Reis reported this fact to the Rulane Gas Company and apparently turned off the manually operated valve at that time. The Gas Company's service man did not arrive until 1 p.m. on the 18th when, with Mr. Reis, he descended into the basement, a small enclosed room, and disregarding a warning not to do so struck a match to light the heater. Instantly an explosion followed, inflicting such serious and painful burns that Reis died the next day, as also did the service man. Upon investigation immediately afterward it was found the manually operated cut-off valve was in "off" position, but the automatic safety valve was "on." There was evidence tending to show that the automatic safety valve, operated by means of a small bi-metal wire clip, was not working. The spring was apparently dead and would not snap back into closing position.

What caused the pilot light to become extinguished was a matter of conjecture, nor is it known when it went out, but it is apparent upon that happening the automatic cut-off valve failed to close and permitted an uninterrupted flow of rulane gas into the heater and thence into the room for some time prior to 9 p.m. July 17th, and that gas continued thereafter

to flow through the orifice of the pilot light, though in much smaller volume. Certainly enough gas had accumulated in the basement room to explode violently when ignited at 1 p.m. on the 18th.

If the automatic cut-off valve was in substantially the same condition in July, 1947, as when purchased, and there is no evidence to show its usefulness would have been exhausted within that period, then we think there was evidence of negligence on the part of Montgomery Ward & Company in selling the heater for use with rulane gas in the Reis home with assurance that it could be used with safety. While the heater was not an inherently dangerous instrumentality if properly constructed and handled, yet it was one capable of causing injury if the safety devices were defective and failed to operate. It may properly be said to have been imminently dangerous in that injury might reasonably have been apprehended when used for the purpose declared. Though the seller may not have had actual knowledge of any defect in the heater or controlling valves, the assurance of safety given when the seller was consciously ignorant whether the apparatus was defective or not when put to use, together with evidence of the discovery of a serious defect as the cause of a subsequent injury therefrom, would carry the implication of negligent failure of duty on the part of the seller. This is in accord with the holding of this Court in the recent case of *Dalrymple v. Sinkoe,* 230 N.C. 453, 53 S.E. 2d 437. There, in an opinion by *Justice Denny,* it was said : "If a seller, not knowing or caring whether his representations are true or false, goes so far as to represent that the article sold is safe for a certain use, while it is imminently dangerous when put to that use, he is liable for negligence. 46 A.J. 943. . . . A vendor who sells a stove that is equipped to burn one type of fuel and represents that it is suitable for use with a different kind of fuel, when in fact it is imminently dangerous when so used, is liable to the same extent as if he had sold a stove knowing it to be dangerously defective."

The duty is not created by contract but stems from the primary obligation resting upon civilized human beings not to cause injury to another through disregard of his safety. The general rule is that one who authorizes the use of a potentially dangerous instrumentality in such a manner or under such circumstances that it is likely to produce injury is held responsible for the natural and probable consequences of his act to any person injured who is not himself at fault. Known danger attendant upon a known use imposes obligation upon him who authorizes it. *Cashwell v. Bottling Works,* 174 N.C. 324, 93 S.E. 901; *Carter v. Towne,* 98 Mass. 567; *Carter v. Yardley & Co., Inc.,* 319 Mass. 92, 164 A.L.R. 559; *McPherson v. Buick Motor Co.,* 217 N.Y. 382; *Smith v. Peerless Glass Co.,* 259 N.Y. 292. An article is said to be imminently dangerous when, though it may safely be used for the purpose intended if properly con-

structed, yet by reason of defective construction a threatened injury may be reasonably apprehended from its use. 42 A.L.R. 1244 (note); 164 A.L.R. 589 (note); 46 A.J. (sup.) 20. And the seller of an article manufactured for it by another is subject to the same liability as the maker if the article has been rendered potentially dangerous by defect in the construction of safety devices. Restatement Law of Torts, secs. 395, 400.

It would seem then that there was some evidence to support the implication of negligence on the part of Montgomery Ward & Company, but a more difficult question follows. Was the original negligence of the seller of the heater in representing it could be used with safety with rulane gas the proximate cause of the injury suffered by plaintiff's intestate fourteen months later? Or was the seller's negligence in this respect insulated by the subsequent intervention of the active negligence of Rulane Gas Company's service man in striking a match, in spite of warning, in a gas filled room? As *Chief Justice Stacy* observed in *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808, "The application of the doctrine of insulating the negligence of one by the subsequent intervention of the active negligence of another, as a matter of law, is usually fraught with some knottiness. However, the principle is a wholesome one, and must be applied in proper instances." Is the instant case a proper one for its application? The doctrine of insulating negligence is after all an application of the definition of proximate cause (*Butner v. Spease, supra*). In the law of negligence proximate cause has been usually defined as that which in natural and continuous sequence, unbroken by any new and independent cause, produces the event and without which it would not have occurred. *Balcum v. Johnson,* 177 N.C. 213, 98 S.E. 532; *McIntyre v. Elevator Co.,* 230 N.C. 539, 54 S.E. 2d 45. And the test usually applied for the determination of the question whether the intervening act of another agency, which has become the efficient cause of an injury, shall be considered a new and independent cause breaking the sequence of events put in motion by the original negligence, is whether the intervening act and resulting injury is one which could reasonably have been foreseen. *Harton v. Telephone Co.,* 141 N.C. 455, 54 S E. 299; *Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555. Foreseeability is an essential element of proximate cause. *Lee v. Upholstery Co.,* 227 N.C. 88, 40 S.E. 2d 688. Responsibility is imposed only for the injurious consequences of acts which could and should have been foreseen and by reasonable care and prudence avoided. *Lee v. Upholstery Co., supra.*

"Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause."

*Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88. In *Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555, a passenger in an automobile was injured when the driver negligently drove into a freight train which had approached the crossing without signals. It was held that the negligence of the train engineer was insulated by that of the driver of the automobile since the "law did not impose upon the engineer the duty of foreseeing such negligent acts of the driver of the automobile."

To the same effect is the holding in *Herman v. R. R.,* 197 N.C. 718, 150 S.E. 361; *Beach v. Patton,* 208 N.C. 134, 179 S.E. 446; *Smith v. Sink,* 211 N.C. 725, 192 S.E. 108; *Chinnis v. R. R.,* 219 N.C. 528, 14 S.E. 2d 400; *Warner v. Lazarus,* 229 N.C. 27, 47 S.E. 2d 496.

In *Kayser v. Jungbauer,* 217 Minn. 140 (146), it was said the act of an unauthorized person in actuating the starter of an automobile which had been parked in gear without taking ordinary precaution, was a superseding and intervening cause which broke the chain of causation between the act of leaving the car in gear and the injury to plaintiff. Restatement Torts, secs. 442, 447, 452.

Here we have evidence of the fact that notwithstanding Montgomery Ward & Company sold the heater with assurance it could be used with safety with rulane gas, the Rulane Gas Company, with knowledge from the tag on the heater itself that it was not originally designed for such use, made the changes and adjustments therefor, and installed the heater. After being in use continuously for fourteen months without accident, the pilot light went out, and, apparently due to defect in the safety cut-off valve, gas continued to flow into the heater and room. After notice that lights were out, the Gas Company delayed service fourteen hours, and in meantime failed to instruct the householder to cut off the gas to the pilot light. It appeared that the proper way to service a heater when the light has gone out and rulane gas has escaped into a closed room was to open the windows and doors and use a blower to dispel or dilute the gas before attempting to re-light. In this situation the service man of Rulane Gas Company with notice of the presence of gas in the room failed to observe the rule, and, after being warned not to do so, struck a match and caused the fatal explosion.

Could Montgomery Ward & Company under these circumstances reasonably have been expected to foresee that fourteen months after it sold the heater gas would be exploded as result of such palpable negligence on the part of the service employee sent by Rulane Gas Company to handle a situation involving escaping gas and an unlighted pilot?

After a careful examination of the record and the exhaustive briefs filed by counsel, we reach the conclusion that the evidence here is insufficient to warrant the holding that the negligence of Montgomery Ward & Company proximately contributed to the fatal injury for which recov-

ery has been had. The judgment holding Montgomery Ward & Company liable for contribution must be

Reversed.

STACY, C. J., took no part in the consideration or decision of this case.