NINA GOOCH NIFONG, Plaintiff-Appellant v. C. C. MANGUM, INC., Defendant and Third-Party Plaintiff-Appellee v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Third-Party Defendant

No. COA94-1222

(Filed 5 March 1996)

**Labor and Employment § 187 (NCI4th)— negligent construction of road alleged—failure to show work "imminently dangerous"—no legal duty of contractor under completed and accepted work doctrine**

In an action arising out of an automobile accident where plaintiff sued the contractor who constructed the road for negligent construction, defendant owed no legal duty to plaintiff under the "completed and accepted work" doctrine where plaintiff failed to present any forecast of evidence to show that defendant's work was "imminently dangerous," and it was irrelevant whether defendant knew or should have known of a difference between the road as constructed and the road as designed.

**Am Jur 2d, Independent Contractor §§ 73-75.**

**Negligence of building or construction contractor as ground of liability upon his part for injury or damage to third person occurring after completion and acceptance of the work. 13 ALR2d 191, supplemented by 58 ALR2d 865.**

Judge Wynn dissenting.

Appeal by plaintiff from order entered 15 July 1994 by Judge D. Jack Hooks, Jr. in Durham County Superior Court. Heard in the Court of Appeals 19 October 1995.

On 12 August 1991, plaintiff was driving in the rain on Miami Boulevard in Durham County when "water . . . came up all over [her] windshield" and she "couldn't see a thing." The car slid, hit the curb, and then ran into trees. Plaintiff was seriously injured. She sued C.C. Mangum, Inc. (hereinafter defendant), the contractor who constructed the road, for negligent construction. Plaintiff claimed that defendant constructed the road so that water could "not drain adequately or sufficiently and would remain dammed or ponded on the roadway, causing a hazard to the motoring public, including [plaintiff]." Defendant impleaded the North Carolina Department of

NIFONG v. C. C. MANGUM, INC.

[121 N.C. App. 767 (1996)]

Transportation (hereinafter DOT). Defendant made a motion for summary judgment which the trial court granted.

Plaintiff appeals.

*Pulley, Watson, King & Lischer, P.A., by Michael J. O'Foghludha, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten, for defendant-appellee.*

EAGLES, Judge.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The trial court must view the forecast of evidence in the light most favorable to the non-moving party. *Canady v. McLeod,* 116 N.C. App. 82, 84, 446 S.E.2d 879, 800, *disc. review denied,* 338 N.C. 308, 451 S.E.2d 632 (1994). If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision. *Shore v. Brown,* 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

Here, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment because plaintiff presented a sufficient forecast of evidence to demonstrate defendant's negligence. Defendant counters that the trial court correctly granted its motion for summary judgment because defendant owed no legal duty to plaintiff under the "completed and accepted work" doctrine. Defendant also argues that because plaintiff was only an incidental beneficiary of the contract between defendant and the DOT, plaintiff cannot maintain an action based upon an alleged breach of contract. Third, defendant argues that even if the "completed and accepted work" doctrine did not apply, plaintiff presented no forecast of evidence of any negligence of defendant during the construction process.

In North Carolina, the "completed and accepted work" doctrine provides that "an independent contractor is not liable for injuries to third parties occurring after the contractor has completed the work and it has been accepted by the owner." *Price v. Cotton Co.,* 226 N.C. 758, 759, 40 S.E.2d 344, 344 (1946). *Price* provides that the contractor is not liable even if the contractor "was negligent in carrying out the

contract." *Price*, 226 N.C. at 759, 40 S.E.2d at 344-45. There are exceptions by which a contractor may be liable even after it has turned over the completed work. Among the exceptions is the so-called "imminently dangerous" work exception. Plaintiff argues that defendant remains liable here because it turned over work to the State that was "imminently dangerous." *See Price*, 226 N.C. at 759, 40 S.E.2d at 345 (stating that a "contractor is liable . . . where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, provided, . . . the contractor knows, or should know, of the dangerous situation created by him, and the owner or contractee does not know of the dangerous condition or defect and would not discover it by reasonable inspection"). Our Supreme Court has stated that an object is "imminently dangerous" if injury will reasonably occur when the object is used for its declared purpose. *Gas Co. v. Montgomery Ward* & Co., 231 N.C. 270, 274, 56 S.E.2d 689, 693 (1949). Other courts have stated that to be imminently dangerous, " '[t]here must be knowledge of a danger, not merely possible, but probable.' " *Reynolds v. Manley*, 265 S.W.2d 714, 719 (Ark. 1954) (quoting *Jaroniec v. C.O. Hasselbarth, Inc.*, 228 N.Y.S. 302, 305 (N.Y. App. Div. 1928)). Black's Law Dictionary defines an "imminently dangerous article" as "[o]ne that is reasonably certain to place life or limb in peril." Black's Law Dictionary 750 (6th ed. 1990).

Plaintiff relies on the deposition testimony of Don Moore, a member of a transportation engineering firm in Florida, to argue that defendant turned over work that was imminently dangerous. Don Moore testified that the road as constructed deviated from the DOT's plans and that it "create[d] a hazardous hydroplaning condition." Don Moore also opined that it "should have been obvious" that the transition in the curve as constructed by defendant did not occur as designed by the DOT. Plaintiff also presented the affidavits of three people who stated that when it rained, water collected on the road at the location of plaintiff's accident and that several people had hydroplaned in that area.

In contrast, defendant presented deposition testimony from several engineers who testified that defendant constructed the Miami Boulevard project in accordance with DOT plans and that the DOT would not have accepted and paid for the work unless the DOT was satisfied with defendant's performance. Defendant presented deposition testimony to show that before a contractor begins working on a road project, DOT engineers drive stakes in the ground with written instructions on them and also write instructions on the edge of the

NIFONG v. C. C. MANGUM, INC.

[121 N.C. App. 767 (1996)]

roadway to show the contractor exactly where to build the pavement. The contractor follows the guidelines set by the DOT and DOT engineers inspect the work as it progresses. It is ultimately up to the DOT to insure that the road is constructed properly. One engineer testified at his deposition that there was no hydroplaning hazard where the curve transitioned. This same engineer testified that a reasonable person would not have noticed any change in the curve as constructed from the original design.

After carefully reviewing the entire record, we conclude that plaintiff failed to present a forecast of evidence sufficient to survive summary judgment. Regardless of whether defendant knew or should have known of a difference between the road as constructed and the road as designed, plaintiff has failed to present any forecast of evidence to show that defendant's work was *imminently* dangerous. Don Moore's opinion that the difference in the transition of the curve created a hazardous hydroplaning condition does not show that defendant turned over to the State work that was imminently dangerous. Because we have determined that plaintiff failed to forecast evidence to bring her claim within the "imminently dangerous" work exception to the "completed and accepted work" doctrine, we conclude that defendant owed no legal duty to plaintiff under the "completed and accepted work" doctrine. Accordingly, the trial court did not err in granting defendant's summary judgment motion.

Affirmed.

Judge JOHNSON concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

Assuming that the "completed and accepted work" doctrine should remain valid in North Carolina[1] and further, that it applies in this case, I believe that the plaintiff forecasted evidence sufficient to overcome summary judgment. Plaintiff's evidence establishes an issue of fact as to whether the contractor should be liable under an exception to the "completed and accepted work" doctrine. For while, as the majority points out, there is testimony to the contrary, when

---

1. *See Thrift v. Food Lion*, 111 N.C. App. 758, 766, 433 S.E.2d 481, 486 n.1 (1993) (Greene, J. dissenting) dissent adopted by our Supreme Court in *Thrift v. Food Lion*, 336 N.C. 309, 442 S.E.2d 504 (1994) ("Many courts have completely abandoned the 'completed and accepted' rule, even in the context of construction contracts.")

viewed in a light most favorable to the non-moving party, the testimony of the plaintiff's expert, Don Moore, establishes an issue of fact as to whether the defendant turned over work that was imminently dangerous. He testified that the road as constructed deviated from DOT's plans; that the road created a "hazardous hydroplaning condition"; and that it should have been obvious that the transition in the curve as constructed by defendant did not occur as designed by the DOT. Moreover, plaintiff's evidence showed that at least three other people had "hydroplaned" in the area. I would allow a trial of this case.