LUCILLE GRIGGS, Plaintiff-Appellant v. SHAMROCK BUILDING SERVICES, INC., Defendant-Appellee

No. COA05-1536

(Filed 19 September 2006)

**Premises Liability— slip and fall—completed and accepted rule**

    The trial court erred in a slip and fall case by granting summary judgment in favor of defendant cleaning service on the basis of the completed and accepted rule, because: (1) the trial court erroneously extended the rule beyond the context of contracts for construction or repair to service contracts; and (2) defendant's argument that it was not the owner or operator of the premises, and thus did not owe a duty to plaintiff, will not be addressed for the first time on appeal.

Appeal by Plaintiff from order dated 17 August 2005 and order entered 30 August 2005 by Judge Timothy L. Patti in Superior Court, Catawba County. Heard in the Court of Appeals 16 August 2006.

    *John J. Korzen; and Lyndon R. Helton, PLLC, by Lyndon R. Helton, for Plaintiff-Appellant.*

    *Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by L. Kristin King and Heather T. Twiddy, for Defendant-Appellee.*

McGEE, Judge.

Lucille Griggs (Plaintiff) filed a complaint against Shamrock Building Services, Inc. (Defendant) on 5 August 2004 alleging that employees of Defendant, a cleaning service, negligently left a slick residue on the floor at RPM Wood Finishes Group, Inc. (RPM), where Plaintiff worked, causing Plaintiff to slip, fall, and sustain injuries. Plaintiff alleged the fall occurred on 8 August 2001.

Defendant answered and denied that Defendant's employees left a slick residue on RPM's floor. Defendant also moved to dismiss the complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and alleged Plaintiff was contributorily negligent and RPM was negligent. Defendant later voluntarily dismissed without prejudice its defense regarding negligence by RPM. Plaintiff filed a first amended complaint on 8 July 2005, changing the date of Plaintiff's alleged injury from 8 August 2001 to 10 August 2001. Defendant filed an answer to Plaintiff's first amended complaint, again denying that its em-

ployees left a slick residue on the floor at RPM. Defendant again moved to dismiss Plaintiff's first amended complaint and alleged contributory negligence.

Defendant filed a motion for summary judgment dated 14 July 2005. The trial court conducted a hearing on Defendant's motion on 25 July 2005. Evidence introduced at the hearing tended to show the following. Plaintiff testified at her deposition that in August 2001, she was employed as an administrative assistant at RPM. She testified that while at work at RPM on 10 August 2001, she was called to the lobby to meet someone. Plaintiff walked from her cubicle work area to the lobby through a two-door elevator. The elevator opened on each side with one door opening onto the cubicle work area and one door opening onto the lobby. Plaintiff stepped into the elevator from the cubicle work area side, and immediately stepped out of the elevator on the lobby side. As Plaintiff stepped out of the elevator, she slipped and fell, hitting the wooden floor outside the elevator. Plaintiff further testified as follows:

Q. Okay. What did you see?

A. I just . . . saw where my foot had just slid across the floor.

Q. Specifically, what did you see?

A. It was just like kind of a skid mark. It was like kind of a film on the floor, but I didn't know what it was. It was just something on the floor. I don't know what it was.

Q. Could you see any type of puddle of fluid on the floor?

A. No. It wasn't that kind of a—it was just like ice, maybe, on asphalt, like black ice kind of thing, and then you could just see where my shoe went just through it.

Belia Conner (Conner) testified at her deposition that she had been employed by RPM as a corporate receptionist since November 2000. Conner testified that she worked in RPM's lobby and saw Plaintiff fall on 10 August 2001. Conner said that her boss, Brenda Taylor, told her to type a statement regarding the events Conner observed on 10 August 2001. Conner typed and signed the following statement, which was introduced at her deposition:

Right before lunchtime on August 10, 2001. I observed [Plaintiff] slip and fall coming out of the elevator into the lobby at RPM Wood Finishes Group. After helping [Plaintiff] to a chair, I went

GRIGGS v. SHAMROCK BLDG. SERVS., INC.

[179 N.C. App. 543 (2006)]

over to the elevator and examined the area where [Plaintiff] fell. There seemed to be an oily substance around the doors and the floor around the elevator. Immediately I called Andy Frye from [Defendant cleaning service] and notified him of the incident. He came over to our facility in a matter of minutes and inspected the area in and around the elevator. Mr. Frye acknowledged that his cleaning crew must have over sprayed the stainless steel doors and walls when cleaning the inside and outside of the elevator. After this, Brenda Taylor Senior Employee Relations Manager instructed [Plaintiff] to go to the Hart Industrial Clinic to be examined.

Andrew Frye (Frye) testified at his deposition that he had worked for Defendant as a sales manager for approximately twelve years. Frye testified that in August 2001, RPM was a client of Defendant and every weeknight from 5:30 p.m. to 7:30 p.m., two of Defendant's employees cleaned RPM's premises. Frye visited RPM on a monthly basis to make sure everything was going well with the cleaning contract.

Frye testified that Conner called him on 10 August 2001 to tell Frye that someone had fallen at RPM and asked Frye "to come over and just look around." Frye drove to RPM and waited for Brenda Taylor at the reception desk. Frye testified he had no memory of any discussion with Conner regarding cleaning. Frye inspected the area where Plaintiff had fallen and testified "there was nothing evident on that floor. It was as dry as the top of this table."

At the summary judgment hearing, Defendant argued it was entitled to summary judgment because Defendant had completed, and RPM had accepted, Defendant's cleaning work prior to Plaintiff's fall. Therefore, even if Defendant had been negligent in the performance of the contract, Defendant no longer owed a duty to Plaintiff under the completed and accepted rule. Defendant argued that RPM had accepted Defendant's work either when Defendant's employees finished cleaning the premises on 9 August 2001 or when RPM opened for business on 10 August 2001. Defendant also argued it was entitled to summary judgment because Plaintiff had failed to produce any evidence of negligence on the part of Defendant.

The trial court entered an order dated 17 August 2005 granting Defendant's motion for summary judgment. In its order, the trial court stated that "the work of [Defendant][] had been completed and had been accepted by [RPM] at the time of the incident complained

of in the pleadings, that there was no imminently dangerous work exception, and thus . . . [D]efendant is not subject to liability for . . . [P]laintiff's claim as a matter of law[.]"

Plaintiff filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rules 59 and 60 on 4 August 2005. The trial court denied Plaintiff's motion on 30 August 2005. Plaintiff appeals.

---

Plaintiff argues the trial court erred by granting summary judgment for Defendant on the basis of the completed and accepted rule. Specifically, Plaintiff argues the trial court erred by extending the completed and accepted rule beyond the context of contracts for construction or repair to a contract for cleaning services. We agree.

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). The party who moves for summary judgment has the burden of "establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). This burden may be met by "proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). On appeal from summary judgment, we review the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co.*, 130 N.C. App. at 733, 504 S.E.2d at 577.

Only three cases dealing with the completed and accepted rule have been decided by our appellate courts since 1946. In *Price v. Cotton Co.*, 226 N.C. 758, 40 S.E.2d 344 (1946), the defendant, an independent contractor, contracted with the owner of a tobacco barn to construct a platform to hold a kerosene tank. *Id.* at 758, 40 S.E.2d at 344. Pursuant to the contract, the defendant "installed a 250-gallon [kerosene] tank on a platform constructed of 2x4 scantling and braced by 1x4's[.]" *Id.* The plaintiff, an employee of an oil dealer, was

injured when the platform gave way as the plaintiff was standing on the platform to fill the tank. *Id.* The plaintiff filed a complaint, alleging that the defendant "carelessly and negligently built the scaffold for the support of said kerosene tank out of timbers which were insufficient to hold the weight of the tank when filled with kerosene and the weight of a man while filling said tank." *Id.*

The defendant demurred to the plaintiff's complaint on the ground that prior to the plaintiff's injury, the work had been completed by the defendant and accepted by the owner. *Id.* at 759, 40 S.E.2d at 344. The trial court sustained the demurrer and our Supreme Court affirmed, recognizing that "[i]t is the general rule that an independent contractor is not liable for injuries to third parties occurring after the contractor has completed the work and it has been accepted by the owner." *Id.* Our Supreme Court further recognized that "[w]here work has been completed and accepted by the owner, and the defect in construction, if any, is not hidden but readily observable upon reasonable inspection, the contractor is not liable." *Id.* at 760, 40 S.E.2d at 345. The Court held that because the defendant had completed the work and the owner had accepted it, and the plaintiff did not allege there were any hidden defects in the construction, the defendant was not liable for the plaintiff's injuries. *Id.*

In the next case to discuss the completed and accepted rule, *Thrift v. Food Lion*, 111 N.C. App. 758, 433 S.E.2d 481 (1993) (Greene, J., dissenting), *rev'd per curiam for reasons stated in the dissent*, 336 N.C. 309, 442 S.E.2d 504 (1994), the dissent adopted by the Supreme Court refused to extend the application of the rule beyond the context of contracts for construction and repair. *Thrift*, 111 N.C. App. at 765-66, 433 S.E.2d at 486. In *Thrift*, an employee of the defendant Triangle Ice Co. (Triangle Ice) delivered bags of ice to a store operated by the defendant Food Lion (Food Lion). *Id.* at 760, 433 S.E.2d at 483. A Food Lion employee supervised the delivery and counted off the bags as the Triangle Ice employee loaded the ice into a bin located inside the Food Lion store, near the entrance. *Id.* After the Triangle Ice employee completed the delivery and left, the Food Lion employee noticed a puddle on the floor and sent another Food Lion employee to get a cloth and dry the floor. *Id.* However, before the employee could dry the floor, the plaintiff walked into the area to get a shopping cart, slipped on the water and fell, sustaining injuries. *Id.*

The plaintiff sued Food Lion and Triangle Ice, and the trial court granted summary judgment for Triangle Ice. *Id.* A divided panel of our Court affirmed the trial court on the ground that the completed and accepted rule applied in the context of a contract for the delivery of goods. *Id.* at 765, 433 S.E.2d at 486. The majority held that "[o]ne who delivers goods or materials and then leaves the delivery site should be afforded at least the same protection as a contractor who actively participates in the production of a structure or the repair of a building or fixture." *Id.*

The dissent in *Thrift* stated that "North Carolina courts have applied the 'completed and accepted' rule only in the context of contracts for construction or repair, . . . and there is no justification for extending its application to the delivery of goods." *Id.* at 765-66, 433 S.E.2d at 486 (citations omitted). The dissent further stated that "[t]he proper test of the liability of Triangle Ice requires application of general principles of negligence, that is, all persons are held to a standard of reasonable care for the protection of third parties who may foreseeably be endangered by a negligent act." *Id.* at 766, 433 S.E.2d at 486. In a footnote, the dissent noted that

> [m]any courts have completely abandoned the "completed and accepted" rule, even in the context of construction contracts. *See, e.g., Kapalczynski v. Globe Constr. Co.,* 172 N.W.2d 852 (Mich. App. 1969); W. Page Keeton et al., *Prosser and Keeton on Torts* § 104A, at 723 (5th ed. 1984) ("It is now the almost universal rule that the contractor is liable to all those who may foreseeably be injured by the structure, not only when he fails to disclose [dangerous] conditions known [to] him, but also when the work is negligently done.").

*Id.* at 766 n. 1., 433 S.E.2d at 486 n. 1. Adopting the dissent, the Supreme Court reversed the decision of our Court. *Thrift,* 336 N.C. at 309, 442 S.E.2d at 505.

In *Nifong v. C.C. Mangum, Inc.,* 121 N.C. App. 767, 468 S.E.2d 463, *aff'd per curiam,* 344 N.C. 730, 477 S.E.2d 150 (1996), our Court again addressed the completed and accepted rule. In *Nifong,* the plaintiff was driving in the rain on Miami Boulevard in Durham when water "came up all over [her] windshield" and obscured her vision. *Nifong,* 121 N.C. App. at 767, 468 S.E.2d at 464. As a result, the plaintiff's car slid, hit the curb and ran into trees, causing her to sustain serious injuries. *Id.* The plaintiff sued the defendant contractor who had constructed the road for negligent construction, and the trial

court granted summary judgment for the defendant. *Id.* at 767-68, 468 S.E.2d at 464.

In support of summary judgment, the defendant presented deposition testimony from several engineers who testified that the defendant had constructed Miami Boulevard in accordance with DOT plans and that DOT would not have accepted the defendant's work if DOT had not been satisfied with the work. *Id.* at 769, 468 S.E.2d at 465.

> [The] defendant presented deposition testimony to show that before a contractor begins working on a road project, DOT engineers drive stakes in the ground with written instructions on them and also write instructions on the edge of the roadway to show the contractor exactly where to build the pavement. The contractor follows the guidelines set by the DOT and DOT engineers inspect the work as it progresses. It is ultimately up to the DOT to insure that the road is constructed properly.

*Id.* at 769-70, 468 S.E.2d at 465-66. One of the engineers testified that there was no hydroplaning hazard at the location of the plaintiff's accident and "a reasonable person would not have noticed any change in the curve as constructed from the original design." *Id.* at 770, 468 S.E.2d at 466.

The plaintiff presented deposition testimony that the road construction deviated from DOT plans and "create[d] a hazardous hydroplaning condition." *Id.* at 769, 468 S.E.2d at 465. The plaintiff also presented deposition testimony that it "should have been obvious" that the curve was not constructed as designed by DOT. *Id.* The plaintiff also presented affidavits of three people who stated that several vehicles had hydroplaned in the area of the plaintiff's accident and that water collected at that location when it rained. *Id.*

Our Court recognized that "[i]n North Carolina, the 'completed and accepted work' doctrine provides that 'an independent contractor is not liable for injuries to third parties occurring after the contractor has completed the work and it has been accepted by the owner.' " *Id.* at 768, 468 S.E.2d at 465 (quoting *Price*, 226 N.C. at 759, 40 S.E.2d at 344). However, our Court also recognized that as an exception to the completed and accepted rule, a contractor remains liable where the work completed and turned over to the owner was imminently dangerous to third persons. *Id.* at 769, 468 S.E.2d at 465.

We held that the plaintiff failed to forecast evidence showing that the defendant's work was imminently dangerous. *Id.* at 770, 468

S.E.2d at 466. Therefore, the defendant did not owe any legal duty to the plaintiff under the completed and accepted rule. *Id.*

In the present case, Defendant contracted to clean RPM's premises each weekday night from 5:30 p.m. to 7:30 p.m. RPM did not contract with Defendant to provide construction or repair services to RPM's premises. Plaintiff was injured when she slipped on the floor outside the elevator in the lobby of RPM. It is not disputed that Defendant's employees cleaned RPM's premises on 9 August 2001 from 5:30 p.m. to 7:30 p.m. and that RPM opened for business the following morning. However, it is disputed whether Defendant left a substance, which caused Plaintiff to slip and fall, on the floor at RPM.

The present case is most analogous to *Thrift*. As the dissent in *Thrift*, which was adopted by our Supreme Court, refused to extend the application of the completed and accepted rule to the delivery of goods, we also decline to extend the application of the rule to service contracts. Defendant argues that a service contract is more analogous to a construction or repair contract than a contract for the sale of goods, in that service contracts and construction contracts both involve work done to property. Even if this may be true, our Courts have never applied the completed and accepted rule outside the context of construction or repair contracts. *See Thrift*, 111 N.C. App. at 765-66, 433 S.E.2d at 486. Moreover, we decline to expand the application of the rule when the rule is being abandoned, even in the context of construction contracts, in favor of modern rules of foreseeability. *See Id.* at 766 n. 1., 433 S.E.2d at 486 n. 1; *see also* Emmanuel S. Tipon, *Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; "Foreseeability" or "Modern" Rule*, 75 A.L.R.5th 413, 436-37 (2000) (noting that "[a]s late as the 1950s, the majority of jurisdictions adhered to the 'completed and accepted rule.' Since then, the 'completed and accepted rule' has been severely criticized and repudiated in most states and is now the minority rule while the 'modern rule' has become the majority rule."). Accordingly, we hold that the trial court erred by granting summary judgment for Defendant on the basis of the completed and accepted rule, as it has no application to service contracts. Defendant's liability, if any, should be governed by general principles of negligence. *See Thrift*, 111 N.C. App. at 766, 433 S.E.2d at 486.

Defendant also argues that a separate ground exists upon which summary judgment could have been granted, and therefore, we

should uphold the grant of summary judgment for Defendant. Defendant argues that because Plaintiff is attempting to hold Defendant liable on a theory of premises liability and Defendant was not the owner or operator of the premises, Defendant did not owe a duty to Plaintiff. However, Defendant did not argue this ground before the trial court. Rather, Defendant's second argument in favor of summary judgment was that

> there is no evidence of any negligence on the part of [Defendant] that . . . [P]laintiff has been able to produce . . . either. The depositions, discovery served indicate that there was something on the floor, may have been something on the floor. There's no clear evidence. There's no evidence, period, as to what that substance was. And there's absolutely no evidence that [Defendant] put a substance on the floor.

We do not address arguments in favor of granting summary judgment that were not presented to the trial court. *See McDonald v. Skeen,* 152 N.C. App. 228, 230, 567 S.E.2d 209, 211, *disc. review denied,* 356 N.C. 437, 571 S.E.2d 222 (2002). Therefore, because Defendant's argument was raised for the first time on appeal, we decline to address it.

The trial court erred by granting summary judgment for Defendant, and because genuine issues of material fact remain, we remand the matter to the trial court. Because we reverse and remand, we do not reach Plaintiff's remaining assignments of error.

Reversed and remanded.

Judges BRYANT and ELMORE concur.