**LAMB v. D.S. DUGGINS WELDING, INC.**

[222 N.C. App. 52 (2012)]

JASON B. LAMB AND ANDREA LAMB, PLAINTIFFS v. D.S. DUGGINS WELDING, INC.
AND MABE STEEL, INC., DEFENDANTS

No. COA12-129

(Filed 7 August 2012)

### Construction Claims—negligence—completed and accepted work doctrine

Where a sub-subcontractor completed its work on a construction project and the work was accepted by the general contractor, and where the condition of the work as completed by the sub-subcontractor was changed by the general contractor after the work had been accepted, the completed and accepted work doctrine applied to bar the recovery of damages in a negligence action by an employee of the general contractor against the sub-subcontractor.

Appeal by plaintiffs from Order entered 10 November 2011 by Judge Vance Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 6 June 2012.

*Smith, James, Rowlett & Cohen, LLP, by Margaret Rowlett and Seth R. Cohen, for plaintiff-appellants.*

*Pinto Coates Kyre & Brown, PLLC, by Deborah J. Bowers, Richard L. Pinto, and L. Lamar A. Armstrong, III, for defendant-appellee Mabe Steel, Inc.*

BRYANT, Judge.

Where a sub-subcontractor completed its work on a construction project and the work was accepted by the general contractor, and where the condition of the work as completed by the sub-subcontractor was changed by the general contractor after the work had been accepted, the completed and accepted work doctrine applies to bar the recovery of damages in a negligence action by an employee of the general contractor against the sub-subcontractor.

*Facts and Procedural History*

This case arises out of an accident at a construction site that occurred on 18 December 2008. Evidence gathered during discovery reveals that plaintiff Jason B. Lamb ("Lamb") has been employed by Lomax Construction, Inc. ("Lomax") since 1999. In 2008, Lomax

assigned Lamb to be site superintendent on a construction project to put an addition on the High Point Public Library in High Point, North Carolina. Lomax subcontracted with D.S. Duggins Welding, Inc. ("Duggins") to install the steel decking on the project. In turn, Duggins subcontracted the installation of the steel decking to Mabe Steel, Inc. ("Mabe").

During the installation of the steel decking, Duggins requested that Mabe also install a perimeter safety cable, as required by OSHA regulations. OSHA regulations require a safety cable to be installed at a height of forty-two (42) inches above the walking level and that the cable is able to withstand a force of at least 200 pounds in any outward or downward direction without deflecting more than three (3) inches. When Mabe installed the perimeter safety cable on the third floor, Mabe terminated the end of the cable by wrapping it around a vertical column near the wall of the existing structure and secured it with clamps and a turnbuckle. On the columns between the termination points, Mabe threaded the cable through pre-existing holes in the columns or, where there were no pre-existing holes, field welded nuts to the columns and threaded the cable through the holes in the nuts. The purpose of threading the cable through columns and nuts was to maintain the cable at the required height of forty-two (42) inches above the walking level. Mabe completed the installation of the steel decking and perimeter safety cable by 13 October 2008.

At some point after Mabe left the construction project, the column to which Mabe terminated the third floor safety cable was removed. As a result, Lomax employees moved the termination point of the third floor safety cable to an adjacent column at the direction of Lamb. However, instead of wrapping the cable around the column and securing it, as it was previously terminated by Mabe, the Lomax employees terminated the safety cable to a nut Mabe had welded onto the column.

As site superintendent of the construction project, one of Lamb's duties was to inspect the perimeter safety cables. Lamb performed this duty everyday. On 18 December 2008, Lamb was testing the deflection of the third floor safety cable by applying weight to it when the weld attaching the nut to the column broke and the cable fell slack. As a result, Lamb lost his balance and fell over the edge of the third floor to the ground below, sustaining severe injuries.

Lamb and his wife, Andrea Lamb, filed suit against Duggins and Mabe on 30 August 2010 in Randolph County Superior Court alleging

negligence and loss of consortium. Mabe timely answered plaintiffs' complaint on 10 November 2010. Duggins failed to answer plaintiffs' complaint and upon plaintiffs' filing of a motion and affidavit for entry of default on 5 November 2010, entry of default was entered against Duggins. Following a period of discovery, Mabe filed a motion for summary judgment on 8 September 2011 on the grounds that plaintiffs' claims against Mabe "are barred by the principles surrounding the completed and accepted work doctrine, by the applicable case precedent concerning the legal responsibility of a contractor to the employees of another contractor, and by principles of proximate cause as a matter of law." Following a 31 October 2011 hearing, Judge Long granted Mabe's motion for summary judgment on 8 November 2011. The order was filed 10 November 2011. Plaintiffs appeal.

---

On appeal, plaintiffs raise the issue of whether the trial court erred in granting Mabe's Motion for Summary Judgment.

"Summary judgment is a device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Dalton v. Camp*, 353 N.C. 647, 650, 548 S.E.2d 704, 707 (2001) (citation omitted). The purpose of summary judgment is to "eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim of a party is exposed." *Id.* (citation omitted).

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). "On appeal from summary judgment, we review the evidence in the light most favorable to the nonmoving party." *Griggs v. Shamrock Bldg. Services, Inc.*, 179 N.C. App. 543, 546, 634 S.E.2d 635, 637 (2006) (citation omitted). "If the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision." *Nifong v. C.C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465 (1996) (citing *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989)).

LAMB v. D.S. DUGGINS WELDING, INC.

[222 N.C. App. 52 (2012)]

"In a negligence action, summary judgment for defendant is proper where the evidence fails to establish negligence on the part of defendant, establishes contributory negligence on the part of plaintiff, or establishes that the alleged negligent conduct was not the proximate cause of the injury." *Hahne v. Hanzel*, 161 N.C. App. 494, 497-98, 588 S.E.2d 915, 917 (2003) (emphasis and citation omitted). However, "[a]s a general proposition, issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant but should be resolved by trial in the ordinary manner." *Vassey v. Burch*, 301 N.C. 68, 73, 269 S.E.2d 137, 140 (1980) (internal quotation and citation omitted). But, "where the facts are undisputed, '[t]he issue of whether a duty exists is a question of law for the court.' " *Finley Forest Condominium Ass'n v. Perry*, 163 N.C. App. 735, 739, 594 S.E.2d 227, 230 (2004) (citation omitted).

In the case *sub judice*, the material facts are undisputed. Thus, we must determine whether Mabe is entitled to judgment as a matter of law. If plaintiffs' recovery is precluded as a matter of law based on the completed and accepted work doctrine, the question of Mabe's negligence need not be reached and summary judgment is appropriate. In granting Mabe's motion for summary judgment, the trial court cited the holding of *Price v. Johnston Cotton Co. of Wendell, Inc.*, 226 N.C. 758, 40 S.E.2d 344 (1946), which applied the completed and accepted work doctrine, and determined that Mabe was entitled to judgment as a matter of law. Plaintiffs contend this finding was in error. Specifically, plaintiffs argue that the completed and accepted work doctrine does not apply in this case. In the alternative, plaintiffs argue that this case falls within an exception to the completed and accepted work doctrine. We disagree with both of plaintiffs' contentions.

The completed and accepted work doctrine provides "that an independent contractor is not liable for injuries to third parties occurring after the contractor has completed the work and it has been accepted by the owner." *Id.* at 759, 40 S.E.2d at 344. Furthermore, the court noted that, "a fortiori, [an independent contractor] is not liable where . . . the injury is not due to the condition in which he left the work." *Id.* at 759, 40 S.E.2d at 345.

While the completed and accepted work doctrine remains the law in North Carolina, it is rarely applied. *See Griggs*, 179 N.C. App. at 546, 634 S.E.2d at 637 ("Only three cases dealing with the completed and accepted rule have been decided by our appellate courts since 1946."). But where we have addressed the completed and accepted work doctrine, we have limited its applicability to cases dealing with

construction and repair contracts. *See Thrift v. Food Lion, Inc.*, 336 N.C. 309, 442 S.E.2d 504 (1994) (The "completed and accepted" doctrine does not apply to the delivery of goods.); *Griggs*, 179 N.C. App. 543, 634 S.E.2d 635 (The "completed and accepted" doctrine does not apply to service contracts.). Because the case *sub judice* involves a construction contract, we must examine whether the doctrine is applicable.

Plaintiffs contend that the completed and accepted work doctrine "does not apply . . . because [Lamb] was not a third party on the construction site but rather one of the people to whom Mabe owed a duty of safety." In support of their argument, plaintiffs cite to the line of cases that establishes the "completed and accepted work" doctrine. In these cases, a third party filed suit against the general contractor for damages suffered as a result of a defect in construction. *See, e.g., Price*, 226 N.C. 758, 40 S.E.2d 344 (1946) (Owner of a tobacco barn hired defendant contractor to construct a platform to hold a kerosene tank, which later collapsed when plaintiff was filling the kerosene tank.). Plaintiffs note that the facts in the present case are different in that an employee of a general contractor, Lamb, has brought suit against a subcontractor, Mabe. Therefore, plaintiffs claim that Lamb is not a third party as required by the completed and accepted work doctrine.

Despite the fact that Lamb is an employee of the general contractor and Mabe is a subcontractor, we think the completed and accepted work doctrine applies. Plaintiffs, citing *Williams v. Charles Stores Co., Inc.*, 209 N.C. 591, 184 S.E. 496 (1936), argue that the completed and accepted work doctrine in negligence actions is based on the borrowed concept of privity from contracts law. In *Williams*, our Supreme Court noted that an independent contractor owed no duty to a third party on the grounds that there was no privity of contract. *Id.* at 597, 184 S.E. at 499. In the present case, evidence gathered through discovery reveals that Lomax subcontracted the installation of the steel decking to Duggins. Duggins in turn subcontracted the work to Mabe pursuant to a verbal agreement. Accordingly, Lamb, a Lomax employee, is a third party to the agreement between Duggins and Mabe. Because there was no contract between Lomax and Mabe, plaintiffs' argument must fail.

Additionally, as noted supra, the *Price* court stated that "a fortiori, [an independent contractor] is not liable where . . . the injury is not due to the condition in which he left the work." *Price*, 226 N.C. at 759, 40 S.E.2d at 345. In the present case, there is no question that the perimeter safety cable was not in the same condition as it was when

**LAMB v. D.S. DUGGINS WELDING, INC1**

[222 N.C. App. 52 (2012)]

Mabe left the construction project. When Mabe installed the safety cable, it terminated the cable by wrapping it around a column near the existing building and then secured it with clamps and a turnbuckle. After Mabe left the project, Lomax employees, at the direction of Lamb, moved the termination point of the safety cable to the nut that Mabe had welded onto a column. Therefore, the "injury is not due to the condition in which [Mabe] left the work."

Although no North Carolina case has ever addressed the issue of whether the completed and accepted work doctrine applies when an employee of a general contractor seeks damages against a subcontractor, other jurisdictions have. We find *Fischbach and Moore, Inc. v. Foxworth*, 246 Miss. 814, 152 So.2d 714 (1963), particularly on point and persuasive.

In *Fischbach*, an employee of a general contractor filed a negligence suit against an electrical subcontractor after he suffered an electrical shock when the steel ladder he was climbing came into contact with an electrical circuit that had been installed by the subcontractor. *Id.* at 816-17, 152 So.2d at 714-15. In reversing the decision of the lower court and finding in favor of the defendant subcontractor, the court noted that the completed and accepted work doctrine "is applied to subcontractors, so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor." *Id.* at 819, 152 So.2d at 716. In applying the completed and accepted work doctrine, Mississippi's Supreme Court found that the electrical subcontractor was not liable and owed no duty to the employee of the general contractor where the subcontractor had completed and turned over its work on the construction project to the general contractor months before the accident and thereafter, a third party changed the condition of their work by removing a portion of the overlapping roof, causing the electrical circuit to be exposed. *Id.* at 820, 152 So.2d at 716.

In the instant case, where the material facts are similar to those in *Fischbach*, we find that the completed and accepted work doctrine does apply to prevent an employee of a general contractor from recovering damages from a subcontractor after the subcontractor had completed their work, the general contractor had accepted the work, and the subcontractor owed no further duty to the general contractor.

Plaintiffs also contend that, if the completed and accepted work doctrine applies, the present case falls under an exception to the doctrine. In *Price*, the court acknowledged that

"[t]here are also well recognized exceptions to the general rule, one of which is that the contractor is liable where . . . the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, provided . . . the contractor knows, or should know, of the dangerous situation created by him, and the owner or contractee does not know of the dangerous condition or defect and would not discover it by reasonable inspection."

*Price*, 226 N.C. at 759, 40 S.E.2d at 345 (citation omitted). "Our Supreme Court has stated that an object is 'imminently dangerous' if injury will reasonably occur when the object is used for its declared purpose." *Nifong*, 121 N.C. App. at 769, 468 S.E.2d at 465 (citing *Rulane Gas Co. v. Montgomery Ward & Co.*, 231 N.C. 270, 274, 56 S.E.2d 689, 693 (1949)). *See also Reynolds v. Manley*, 223 Ark. 314, 322, 265 S.W.2d 714, 719 (1954) (" 'There must be knowledge of a danger, not merely possible, but probable.' " (citation omitted)).

Evidence shows that the nut welded to the column by Mabe was not meant to be used to terminate the safety cable. The purpose of the nut was to maintain the perimeter safety cable at a height of forty-two (42) inches above the walking level, as required by OSHA regulations. As best we can determine from the evidence, the nut adequately performed this function. It was only after the termination point of the cable was moved to the nut and the nut was used in a manner that was unintended by Mabe that the 18 December 2008 fall occurred. Therefore, the nut as welded by Mabe was not imminently dangerous and plaintiffs' argument is overruled.

Because we find that the completed and accepted work doctrine applies and that Mabe is entitled to judgment as a matter of law, we need not address other possible grounds for summary judgment.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

Judges STEPHENS and THIGPEN concur.